UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISION and UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>NUDGE, LLC; RESPONSE MARKETING GROUP, LLC; BUYPD, LLC; BRANDON B. LEWIS; RYAN C. POELMAN; PHILLIP W. SMITH; SHAWN L. FINNEGAN; and CLINT R. SANDERSON,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING SLOANS' MOTION TO INTERVENE (DOC. NO. 132)**<br><br><br>Case No. 2:19-cv-00867-DBB-DAO<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is the Motion to Intervene ("Mot.," Doc. No. 132) filed by Erryl Sloan, Rosemary Sloan, American Estate and Trust FBO Erryl Sloan IRA, American Estate and Trust FBO Rosemary Sloan IRA, and E&R Enterprise, LLC (collectively, the "Sloans"). The Sloans move to intervene in order to seek relief from the preliminary injunction in this case. (*Id.* at 5.) They assert that Defendant BuyPD, LLC ("BuyPD") stopped making payments under its settlement agreement with the Sloans after the injunction was entered, and they seek to exempt those payments from the injunction. (*Id.*) For the reasons set forth below, the motion to intervene is GRANTED.[1]

---

[1] Pursuant to Local Rule DUCivR 7-1(f), the court finds oral argument unnecessary and makes its recommendation on the motion based on the parties' written memoranda.

1

## BACKGROUND

Erryl and Rosemary Sloan are retirees who purchased investment properties from BuyPD. (Mot. 2, Doc. No. 132; Decl. of Rosemary Sloan ("Rosemary Decl") ¶¶ 2–3; Doc. No. 132-1; Decl. of Erryl Sloan ("Erryl Decl.") ¶¶ 2–3, Doc. No. 132-1.) The Sloans allege that in October 2014, BuyPD solicited their purchase of unregistered investment contracts, mainly in the form of investment rental properties which were sold as a "package" with in-place management companies. (Mot. 2, Doc. No. 132; Rosemary Decl. ¶ 3, Doc. No. 132-1; Erryl Decl. ¶ 3, Doc. No. 132-1.) The investments were made using the Sloan's retirement funds, in their individual retirement accounts ("IRAs") at American Estate and Trust. (Mot. 2, Doc. No. 132; Rosemary Decl. ¶ 5, Doc. No. 132-1; Erryl Decl. ¶ 5, Doc. No. 132-1.)

In December 2017, the Sloans retained counsel to represent them in their claims arising out of the investment contracts, against BuyPD, its affiliates, and control persons. (Mot. 2, Doc. No. 132; Rosemary Decl. ¶ 6, Doc. No. 132-1; Erryl Decl. ¶ 6, Doc. No. 132-1; Decl. of Christopher Mader, Esq. in Support of the Sloans' Mot. to Intervene ("Mader Decl.") ¶ 4, Doc. No. 132-2.) In July 2018, the Sloans and BuyPD attended mediation and entered into a written settlement agreement. (Mot. 2-3, Doc. No. 132; Rosemary Decl. ¶ 8, Doc. No. 132-1; Erryl Decl. ¶ 8, Doc. No. 132-1; Mader Decl. ¶ 4, Doc. No. 132-2.) According to the Sloans, their investments through BuyPD were essentially rescinded under the settlement agreement, and they transferred title to twenty-eight investment contracts to BuyPD in exchange for BuyPD's agreement to make structured payments to them totaling $605,000. (Mot. 3, 5, Doc. No. 132; Rosemary Decl. ¶¶ 9, 13, Doc. No. 132-1; Erryl Decl. ¶¶ 9, 13, Doc. No. 132-1; Mader Decl. ¶ 7, Doc. No. 132-2.) The Sloans claim the majority of the settlement payments are funded by the sales of properties they returned to BuyPD, and that the Sloans retained a security interest in

these properties pending sale. (Mot. 3, Doc. No. 132; Rosemary Decl. ¶ 10, Doc. No. 132-1; Erryl Decl. ¶ 10, Doc. No. 132-1; Mader Decl. ¶ 8, Doc. No. 132-2.)

The Sloans assert that the claims they settled were based on securities fraud. (Mot. 5, Doc. No. 132; Mader Decl. ¶ 3, Doc. No. 132-2.) They allege the amount they paid for BuyPD seminars (totaling $17,000) "did not play any role in the mediation, the settlement negotiations, or the amount of the settlement." (Mot. 3, Doc. No. 132; *see also* Mader Decl. ¶ 5, Doc. No. 132-2.)

On November 5, 2019, the Federal Trade Commission ("FTC") and the Utah Division of Consumer Protection ("Division") filed their Complaint against Defendants in this action, including BuyPD, asserting claims for violations of federal and state consumer-protection laws. (Compl. ¶¶ 1–2, Doc. No. 4.) The FTC and the Division allege Defendants ran a "deceptive scheme" involving: (1) real estate investment seminars in which they "misrepresented to consumers that they will be taught a proven formula on how to make substantial money from investing in real estate"; (2) telemarketing calls to pitch one-on-one real estate coaching; and (3) the sale of investment properties. (*Id.* ¶¶ 3, 7–8.) On December 18, 2019, the district judge entered a preliminary injunction against Defendants, prohibiting certain activities including transferring any assets "except in the ordinary course of business." (Stipulated Prelim. Inj. ("Injunction") 6, Doc. No. 89.)

The Sloans allege that until the injunction was entered, BuyPD timely made every payment to them under the settlement agreement, totaling $480,000 to date. (Mot. 5, Doc. No. 132; Rosemary Decl. ¶¶ 12–13, Doc. No. 132-1; Erryl Decl. ¶¶ 12– 13, Doc. No. 132-1.) However, following the entry of the injunction, BuyPD ceased making payments to the Sloans,

3

leaving $125,000 unpaid. (Mot. 5, Doc. No. 132; Rosemary Decl. ¶ 13, Doc. No. 132-1; Erryl Decl. ¶ 13, Doc. No. 132-1.)

On May 6, 2020, the Sloans moved to intervene either as a matter of right or permissively in order to seek an exemption from the injunction for the settlement payments. (Mot. 1–2, 5–8, Doc. No. 132.) The FTC and the Division filed a response, opposing intervention by the Sloans as a matter of right but agreeing to permissive intervention solely for the purpose of seeking relief from the injunction. (Pls.' Resp. to Movant Sloans' Mot. to Intervene ("Pls.' Resp.") 2, Doc. No. 136.) Defendants, including BuyPD, filed a memorandum in opposition to the Sloans' motion to intervene. (Defs.' Opp'n to Sloans' Mot. to Intervene ("Defs.' Opp'n") 2, Doc. No. 139.) The Sloans also filed a reply in support of their motion. (Doc. No. 147.)

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention of right and provides, as relevant here:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Under this rule, applicants may intervene as of right if the following elements are met: "(1) the application is timely; (2) the applicant[s] claim[ ] an interest relating to the property or transaction which is the subject of the action; (3) the applicant[s'] interest may as a practical matter be impaired or impeded; and (4) the applicant[s'] interest is [not] adequately represented by existing parties." *W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (alteration in original). The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene." *Id.*

Rule 24(b) of the Federal Rules of Civil Procedure governs permissive intervention and provides, as relevant here, that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The rule also provides that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## DISCUSSION

The Sloans seek leave to intervene either as of right under Rule 24(a) or permissively under Rule 24(b). (Mot. 5–8, Doc. No. 132.) In opposition, Defendants argue the Sloans lack Article III standing and fail to meet the requirements of either intervention as of right or permissive intervention.[2] (Defs.' Opp'n 4–10, Doc. No. 139.) The FTC and the Division do not oppose permissive intervention by the Sloans, but argue they are not entitled to intervention as of right. (Pls.' Resp. 6 n.9, 6–7, Doc. No. 136.)

### A. Article III Standing

"[A]n intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *see also Safe Sts. Alliance v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017) ("Article III's requirements apply to *all* intervenors, whether they intervene to assert a claim or defend an interest." (emphasis in original)). "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not

---

[2] Defendants also argue the motion to intervene should be denied because it contains "factual errors" regarding the scope of the injunction and the source of the settlement payments. (Defs.' Opp'n 4, Doc. No. 139.) These arguments go the merits of whether the Sloans are entitled to relief from the injunction, which the court does not consider at this juncture. Defendants may reassert their arguments when the Sloans move for relief from the injunction.

conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane Cnty. v. United States*, 928 F.3d 877, 888 (10th Cir. 2019) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Defendants contend the Sloans do not allege an imminent injury. (Defs.' Opp'n 5–6, Doc. No. 139.) Defendants frame the Sloans' injury as the risk that BuyPD "*may* not have money to resume contractual payments to the Sloans at the end of this case." (*Id.* at 6 (emphasis in original).) Defendants claim this injury is not imminent and is insufficient to confer standing, citing *Federal Trade Commission v. Johnson*, 800 F.3d 448 (8th Cir. 2015). (Defs.' Opp'n 6, Doc. No. 139.) The Sloans respond that they suffered an actual injury sufficient to confer standing because BuyPD stopped making settlement payments after the injunction was entered, and those payments are now overdue. (Sloans' Reply in Support of Mot. ("Reply") 7, Doc. No. 147.)

With this argument, the Sloans have alleged an actual injury sufficient to confer standing. The injury they claim is the loss of monthly payments due to them under the settlement agreement since the entry of the injunction in this case. This injury is neither speculative nor hypothetical—the Sloans have suffered the injury each month they have not received a payment, and they will continue to be injured until payments resume. There is no need to consider whether some future injury may "imminent," because the Sloans have alleged an existing, ongoing injury. This injury is sufficient to confer standing.

*Federal Trade Commission v. Johnson*, the case relied on by Defendants, involved different circumstances than those presented here. In that case, the proposed intervenors were two consumers who had filed a class action against a Bitcoin mining business several months

6

before the Federal Trade Commission brought its own case against the business. 800 F.3d 448, 450 (8th Cir. 2015). The consumers alleged "a successful FTC suit [would] eliminate class members' contractual right to obtain possession of the Bitcoin mining equipment . . . and [would] extinguish class members ability to recover damages" in their ongoing case. *Id.* at 451 (internal quotation marks omitted). The Eighth Circuit held such injury was conjectural and hypothetical because it was contingent on several conditions: the FTC prevailing, the district court awarding relief precluding consumer recovery, the class being certified, and the class prevailing in its own suit. *Id.* Here, by contrast, the Sloans have already obtained a settlement under which they are entitled to receive monthly payments from BuyPD, and BuyPD stopped making those payments as a result of the entry of the injunction in this case. Thus, unlike the consumers in *Johnson*, the Sloans' injury is not contingent on future conditions but is an actual injury which has already occurred.

Defendants do not challenge any other element of standing. Where the Sloans allege actual injury occurred as a result of the injunction entered in this case and seek an exemption from the injunction, the elements of causation and redressability are also met. (*See* Mot. 5, Doc. No. 132.) Therefore, the Sloans have Article III standing to intervene in this case.

### B. Intervention as of Right

The court next examines whether the Sloans may intervene as a matter of right, considering each of the four requirements under Rule 24(a).

#### 1. Whether the Application is Timely

An application to intervene must be timely. Fed. R. Civ. P. 24(a). Courts assess timeliness "in light of all of the circumstances." *W. Energy Alliance*, 877 F.3d at 1164. In this inquiry, "three non-exhaustive factors are particularly important: (1) the length of time since the

7

movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id.* (internal quotation marks omitted).

The preliminary injunction was entered on December 18, 2019, and the Sloans moved to intervene on May 6, 2020. (*See* Injunction, Doc. No. 89; Mot., Doc. No. 132.) The Sloans assert that once they learned payments ceased because of the injunction, they filed the motion to intervene "as soon as possible thereafter." (Mot. 6, Doc. No. 132.) Neither Plaintiffs nor Defendants challenge the timeliness of the Sloans' motion, nor do they allege prejudice resulting from a delay. Because the Sloans moved to intervene only a few months after the injunction was entered, and while the case is still in its early stages, their motion was timely.

2. Whether the Applicants Claim an Interest Relating to the Property or Transaction Which is the Subject of the Action

To intervene as a matter of right, the applicants must claim "an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2). "Whether . . . applicant[s] ha[ve] an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination." *W. Energy Alliance*, 877 F.3d at 1165 (alterations in original) (internal quotation marks omitted).

The Sloans claim an interest in the resumption of monthly settlement payments from BuyPD, which ceased as a result of the injunction in this case freezing BuyPD's assets. (*See* Mot. 5, Doc. No. 132.) Neither Plaintiffs nor Defendants dispute this element. The Sloans have adequately alleged an interest relating to the subject matter of this action.

3. Whether the Applicants' Interest May, as a Practical Matter, be Impaired or Impeded

Applicants for intervention of right must also show "it is 'possible' that the interests they identify will be impaired" by the pending litigation. *W. Energy Alliance*, 877 F.3d at 1167. The Tenth Circuit has described this element as presenting "a minimal burden." *Id.*

8

Both Plaintiffs and Defendants contend the Sloans fail to meet this requirement, relying on the Tenth Circuit's recent decision in *Commodity Futures Trading Commission v. Rust Rare Coin, Inc.*, 811 F. App'x 497 (10th Cir. 2020) (unpublished). (Pls.' Resp. 6 n.9, Doc. No. 136; Defs.' Opp'n 8–9, Doc. No. 139.) In that case, government agencies brought an enforcement action against a business for allegedly operating a Ponzi scheme. *Rust Rare Coin*, 811 F. App'x at 499. The court entered an order freezing the business's assets and appointing a receiver to identify and preserve the assets in the receivership estate. *Id.* Two customers who had wired $96,000 to the business to purchase gold coins just before its assets were frozen moved to intervene as a matter of right. *Id.* The district court denied the motion, explaining that "[i]n an enforcement action such as this, where an applicant for intervention seeks to resolve a claim against a receivership estate, the applicant's interest is protected when it has the opportunity to bring the claim without intervening." *Id.* (alteration in original). The district court concluded the applicants had such an opportunity because a claim resolution procedure had been implemented which "allowed them to present their claim to the gold coins or the wire-transferred funds as if they were full parties to the enforcement action." *Id.* at 500 (internal quotation marks omitted). The Tenth Circuit affirmed, concluding the applicants "fail[ed] to demonstrate that any aspect of their claim involving the gold coins or the wire-transferred funds cannot be asserted and resolved without impairment of their interest through the claim resolution procedure established by the district court in the enforcement action." *Id.* at 501.

The *Rust Rare Coin* decision relied on a prior Tenth Circuit case addressing intervention in similar circumstances: *Commodity Futures Trading Commission v. Chilcott Portfolio Management, Inc.*, 725 F.2d 584 (10th Cir. 1984). In that case, an investor sought to intervene in a government enforcement action, seeking the return of his $70,000 investment in the defendant

9

corporation. *Id.* at 585–86. The court denied the motion because a receiver had been appointed, and the investor had an opportunity to protect his claimed interest in the corporation's assets through the claim procedure established by the receiver. *Id.* at 586–87.

Here, no receiver has been appointed and no claim resolution procedure has been implemented through which the Sloans could press their claim for resumption of settlement payments from BuyPD. The preliminary injunction does not provide for the appointment of a receiver. (*See* Injunction, Doc. No. 89.) Thus, unlike *Rust Rare Coin* and *Chilcott*, there is no other avenue for the Sloans to protect their interest in the settlement payments or to seek relief from the injunction at this stage. The Sloans' interest in receiving settlement payments from BuyPD is impeded by the injunction in this action, and there is no other opportunity to protect this interest without intervening. Under these circumstances, this element is met.

    4.   <u>Whether the Applicants' Interest is Adequately Represented by Existing Parties</u>

Applicants may not intervene as a matter of right if their interests are adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2). However, "[t]he burden to satisfy this condition is minimal, and . . . [t]he possibility of divergence of interest need not be great in order to satisfy" this element. *W. Energy Alliance*, 877 F.3d at 1168. "[T]his showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001).

The Sloans argue their interest in the resumption of settlement payments is not represented by Plaintiffs, which are both government entities. (Reply 9, Doc. No. 147.) Defendants argue the Sloans' interests are represented because the Complaint "challenges

BuyPD's sale of properties to customers like the Sloans," and "the FTC and the Division expressly seek reimbursement or refunds to entities or persons who purchased properties from BuyPD—like the Sloans." (Defs.' Opp'n 7, Doc. No. 139.) Defendants cite *Tri-State Generation & Transmission Association v. New Mexico Public Regulation Commission*, 787 F.3d 1068 (10th Cir. 2015), for the proposition that representation is adequate where "the objective of the applicant for intervention is identical" to a government agency party, "even though a party seeking intervention may have different ultimate motivation[s] from the governmental agency." *Id.* at 1072–73 (alteration in original) (internal quotation marks omitted).

The Sloans' objectives are not the same as the government agency plaintiffs in this case. Although the FTC and the Division seek redress for consumers harmed in a similar manner as the Sloans, the Sloans have already settled their claim against BuyPD and are merely seeking the resumption of payments under the settlement agreement. In other words, the Sloans' claim for redress based on the sale of properties by BuyPD has been resolved, and they are instead seeking to enforce a contractual right to receive ongoing payments under the settlement agreement. Moreover, they are seeking relief from the injunction which was sought by the government plaintiffs. And Plaintiffs indicate they need more information to determine their position regarding the Sloans' request for relief. (*See* Pls.' Resp. 7–9, Doc. No. 136.) Under these circumstances, the Sloans' interests are not adequately represented by the government plaintiffs in this case.

In sum, the Sloans meet all the requirements to intervene as a matter of right under Rule 24(a).

### C. Permissive Intervention

Even if the Sloans were not entitled to intervene under Rule 24(a), they would be entitled to intervene permissively under Rule 24(b). The Sloans' claim regarding the settlement payments shares "common question[s] of law or fact" with this enforcement action, including the disposition of BuyPD's assets and the interpretation of the terms of the injunction. *See* Fed. R. Civ. P. 24(b)(1)(B). Allowing the Sloans to intervene to challenge the applicability of the injunction to their settlement payments or to seek an exemption will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Defendants argue allowing the Sloans to intervene would permit every other BuyPD customer to intervene and press their claims in this action. (Defs.' Opp'n 10, Doc. No. 139.) However, unlike other customers, the Sloans have already settled their claims against BuyPD and merely seek the resumption of settlement payments, which they assert should be exempt from the injunction. Under these circumstances, allowing the Sloans to intervene will not cause undue delay or prejudice, and will not open the floodgates to the claims of dissimilarly situated customers. Accordingly, the Sloans may also intervene permissively under Rule 24(b).

### CONCLUSION

For the foregoing reasons, the court GRANTS the Sloans' motion to intervene (Doc. No. 132).

DATED this 23rd day of November, 2020.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge