THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| FEDERAL TRADE COMMISSION; and UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>NUDGE, LLC; RESPONSE MARKETING GROUP, LLC; BUYPD, LLC; BRANDON B. LEWIS; RYAN C. POELMAN; PHILLIP W. SMITH; SHAWN L. FINNEGAN; CLINT L. SANDERSON; DEAN R. GRAZIOSI; and SCOTT YANCEY,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [193] MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00867-DBB-DAO<br><br>District Judge David Barlow |

Before the court is a motion to dismiss filed by Defendants Dean Graziosi and Scott Yancey.[1] Graziosi and Yancey request dismissal of Count Five of the First Amended Complaint (FAC) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that it does not state a claim for violation of the Telemarketing Sales Rule (TSR).[2] Having considered the briefing, the pleading, and relevant law, the court now rules as follows.

BACKGROUND

Nudge, LLC, Response Marketing Group, LLC, BuyPD, LLC, Brandon Lewis, Ryan Poelman, Phillip Smith, Shawn Finnegan, and Clint Sanderson (collectively, Nudge Defendants) work with television personalities, including Graziosi and Yancey, to attract consumers to free

---

[1] Graziosi and Yancey Defendants' Motion to Dismiss Count V of Plaintiffs' First Amended Complaint, ECF No. 193.

[2] *See generally id.*

ninety-minute events, referred to as the "Preview Events."[3] The Nudge Defendants misrepresented to consumers that they would be taught a proven formula on how to make money from real estate investing, when in fact the consumers were simply enticed to enroll in a series of increasingly expensive training programs without realizing the promised benefits.[4]

Graziosi and Yancey were the celebrity faces behind the Nudge Defendants' scheme and an integral component in the Nudge Defendants' sales funnel.[5] Using Graziosi's and Yancey's star power to provide a sheen of credibility to their enterprise, the Nudge Defendants enticed consumers to attend the Preview Events.[6] Advertising for Preview Events, bearing Graziosi's or Yancey's names, sold consumers the false promise of learning the secrets to becoming a successful real estate investor.[7] Rather than learning these secrets, however, the consumers were exposed to a sales pitch for a three-day, paid workshop.[8] As with the Preview Events, the principal purpose of the workshops was for the Nudge Defendants to pitch additional paid training, the "Advanced Training" packages.[9] Consumers who purchased Advanced Training were then targeted for telemarketing calls pitching additional products, including purported personalized coaching services under the brand name "The Inner Circle."[10] While selling the "Inner Circle" program, the Nudge Defendants falsely told consumers that they would get access

---

[3] First Amended Complaint, ECF No. 171 at ¶ 4. For purposes of this motion to dismiss, the court treats all factual allegations and the reasonable inferences therefrom as true.

[4] *Id.* at ¶¶ 3–9.

[5] *Id.* at ¶¶ 4, 52, 186–87.

[6] *Id.* at ¶¶ 4, 51–63.

[7] *Id.* at ¶¶ 54–56.

[8] *Id.* at ¶¶ 5, 66–67, 70–71.

[9] *Id.* at ¶¶ 46, 86–88, 101–105.

[10] *Id.* at ¶ 156.

to a mentor and insider tips to help them do profitable real estate deals if they paid for the program.[11]

Graziosi and Yancey were the primary celebrities that the Nudge Defendants used to market their real estate training programs from 2012 until Plaintiffs filed this lawsuit in November 2019.[12] They received a percentage of most or all of the Nudge Defendants' sales to Preview Event customers, including additional sales or services sold through telemarketing.[13] Graziosi and Yancey each were paid more than $10,000,000 for their efforts.[14]

They enticed consumers into the Nudge Defendants' sales funnel by appearing in infomercials and direct mailings advertising the Nudge Defendants' events, promoting the events using their own social media accounts and websites, and appearing in pre-recorded videos or in person at the events where they emphasized the need to obtain training.[15] Graziosi described his role as "put[ting] the [consumers] in the mindset to buy" so "the sales guys come in to slay it."[16]

During the time Graziosi and Yancey worked with the Nudge Defendants, they received or were aware of consumer complaints about the Nudge Defendants' deceptive events and training.[17] By the end of 2013, Graziosi stopped working with the Nudge defendants temporarily, in part because he was concerned that negative feedback about Nudge was hurting his reputation.[18] In September 2015, Graziosi received an email from a trainer and friend he worked

---

[11] *Id.* at ¶¶ 157, 221.

[12] *Id.* at ¶ 185.

[13] *Id.* at ¶ 191.

[14] *Id.*

[15] *Id.* at ¶ 187.

[16] *Id.* at ¶ 188.

[17] *Id.* at ¶ 192.

[18] *Id.* at ¶ 185.

with who described situations that made her "physically sick" and "disgusted" concerning two consumers who had purchased a number of trainings from the Nudge Defendants.[19] By 2016, Yancey was personally named as a defendant in two lawsuits brought by consumers claiming they had been defrauded by the Nudge Defendants into purchasing additional trainings and mentorships.[20] Graziosi and Yancey also knew about consumer complaints about the Nudge Defendants' training that appeared on consumer review websites such as Yelp, Consumer Affairs, and Trustpilot, and discussed with the Nudge Defendants efforts to send positive reviews to those sites in order to counteract the negative reviews.[21]

In September 2019, Graziosi and Finnegan discussed in text messages negative posts about the Nudge Defendants' events appearing under Graziosi's name on the Trustpilot website.[22] Consumer complaints about the Nudge Defendants' training also appeared on the Consumer Affairs website under Graziosi's company.[23] Similarly, by October 2014, Yancey knew about negative complaints about the events he sponsored because they appeared on Yelp's website, which Yancey referred to as the "Yancey slaughter site."[24] As recently as July and August 2019, Yancey discussed with Lewis and Poelman, among others, efforts to send positive reviews to Yelp to improve Yancey's brand image.[25] In September 2019, in response to consumer YouTube videos describing the Nudge Defendants' sales practices as a "scam," Yancey and the Chief Marketing Officer of Defendant Response Marketing Group, LLC discussed the need to

---

[19] *Id.* at ¶ 193.

[20] *Id.* at ¶ 194.

[21] *Id.* at ¶ 195.

[22] *Id.* at ¶ 196.

[23] *Id.* at ¶ 197. The Complaint quotes five consumer complaints left on Consumer Affairs. *See id.*

[24] *Id.* at ¶ 198. The Complaint quotes four consumer complaints left on Yelp. *See id.* at ¶ 199.

[25] *Id.* at ¶ 198.

create a video of Yancey discussing common real estate scams based on bullet points prepared by the Nudge Defendants to counter the negative reviews by consumers.[26] In October 2019, a six-and-a-half-minute video of Yancey talking about various scams was uploaded on YouTube.[27] Despite their knowledge of the various consumer complaints, Graziosi and Yancey continued promoting the Nudge Defendant events.[28]

Graziosi and Yancey also provided input to the Nudge Defendants on marketing and sales strategy.[29] Graziosi suggested to Lewis that they expand online marketing efforts to attract more consumers to their sales funnel.[30] Yancey suggested changes to the Nudge Defendants' pitch for stock programs to help make the Preview Events look like a Yancey program.[31]

Plaintiffs filed the FAC on November 18, 2020, adding Graziosi and Yancey as Defendants and alleging in Count Five that they violated the Telemarketing Sales Rule (TSR) by assisting and facilitating the Nudge Defendants' TSR violations.[32]

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] Dismissal is required when the complaint, standing alone, is insufficient to state a claim upon

---

[26] *Id.* at ¶ 200.

[27] *Id.*

[28] *Id.* at ¶ 192.

[29] *Id.* at ¶¶ 189–92.

[30] *Id.* at ¶ 189.

[31] *Id.* at ¶¶ 189–90.

[32] *See id.* at 66. The TSR implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101–6108, and is codified at 16 C.F.R. § 310.1–310.9.

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

which relief may be granted.[34] Generally, to be facially plausible, each claim must be supported by well-pleaded facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] A claim is deficient and subject to dismissal if a plaintiff offers in support only "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement."[36] Reviewing a motion to dismiss, the court construes the complaint in favor of the plaintiff.[37]

## ANALYSIS

Graziosi and Yancey move for dismissal of Count Five of the FAC for Plaintiffs' failure to state a claim.[38] Specifically, Graziosi and Yancey contend that the FAC fails to allege that they provided substantial assistance to any alleged deceptive telemarketing activity or that they had the requisite knowledge to be held liable.[39] They also argue that the "majority of the conduct" alleged in the Complaint is beyond the applicable statute of limitations.[40]

### 1. The First Amended Complaint Adequately Alleges a TSR Claim.

In the Telemarketing and Consumer Fraud and Abuse Prevention Act, Congress directed the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices."[41] In response, the FTC promulgated the TSR, which prohibits sellers and telemarketers from: (1) "[m]isrepresenting, directly or by implication, in the

---

[34] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

[35] *Iqbal*, 556 U.S. at 678.

[36] *Id.* (citations, brackets, and internal quotation marks omitted).

[37] *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[38] *See* ECF No. 193 at 1–2, 6–11.

[39] *See id.*

[40] *Id.* at 2, 11–12.

[41] 15 U.S.C. § 6102(a)(1).

sale of goods and services . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer[;]" and (2) "[m]aking a false or misleading statement to induce any person to pay for goods or services . . . ."[42] As relevant here, the TSR also states that "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule."[43]

### a. Substantial Assistance

In promulgating the TSR, the FTC observed that "substantial assistance," as the phrase is used in the regulation, requires "some connection between the substantial assistance provided to a deceptive telemarketer and resulting violations of core provisions of the revised proposed Rule."[44] In other words, "the requisite assistance must consist of more than mere casual or incidental dealing with a seller or telemarketer that is unrelated to a violation of the Rule."[45]

Under this provision, the FTC generally alleges in the FAC that Graziosi and Yancey "provided substantial assistance or support to the Nudge Defendants when each knew, or

---

[42] 16 C.F.R. § 310.3(a)(2)(iii); *id.* § 310.3(a)(4).

[43] *Id.* § 310.3(b).

[44] Telemarketing Sales Rule, 60 FR 30406-01 (FTC, June 8, 1995) at 30414.

[45] Telemarketing Sales Rule, 60 FR 43842-01 (FTC, August 23, 1995) at 43852; *see also id.* (noting examples of substantial assistance may include "[p]roviding lists of contacts to a seller or telemarketer that identify persons over the age of 55, persons who have bad credit histories, or persons who have been victimized previously by deceptive telemarketing or direct sales; providing any certificate or coupon which may later be exchanged for travel related services; providing any script, advertising, brochure, promotional material, or direct marketing piece used in telemarketing; or providing an appraisal or valuation of a good or service sold through telemarketing when such an appraisal or valuation has no reasonable basis in fact or cannot be substantiated at the time it is rendered"); *but cf. F.T.C. v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013) (noting that "cleaning a telemarketer's office, delivering lunches to the telemarketer's premises, or engaging in some other activity with little or no relation to the conduct that violates the Rule would not be enough to support liability as an assistor or facilitator" (quoting *FTC, Complying with the Telemarketing Sales Rule*, (Feb. 2011)).

consciously avoided knowing, that the Nudge Defendants were engaged in acts or practices that violated Section 310.3(a)(2) of the [Telemarketing Sales Rule (TSR)] . . . ."[46] Specifically, the FTC asserts that Graziosi and Yancey were the "primary celebrities that the Nudge Defendants used to market and provide credibility to their real estate training programs"[47] and that they appeared in infomercials and direct mailings that the Nudge Defendants used to attract consumers to the Preview Events.[48] Graziosi and Yancey also promoted the Nudge Defendants' events on their own social media accounts and websites, and they appeared in pre-recorded videos or in person at events.[49] Additionally, they provided feedback and advice to the Nudge Defendants to attract more consumers.[50] For their efforts, they received from the Nudge Defendants a percentage of the sales to consumers who attended the Preview Events that Graziosi and Yancey sponsored, including sales of additional training or coaching services that the Nudge Defendants sold to consumers through telemarketing.[51] These efforts occurred over a period of years and resulted in Graziosi and Yancey receiving more than $10,000,000 each from Nudge.[52]

Graziosi and Yancey argue that they were not personally involved in the telemarketing efforts and in addition to marketing the Nudge Preview Events, "[a]t most, Graziosi or Yancey occasionally appeared in person or in prerecorded videos at the live events."[53] The Tenth Circuit

---

[46] ECF No. 171 at ¶¶ 223–24; *see* 16 C.F.R. § 310.3(b); *id.* § 310.3(a)(2)(iii) (defining deceptive telemarketing acts to include misrepresenting "[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer").

[47] ECF No. 171 at ¶ 185.

[48] *Id.* at ¶ 187.

[49] *Id.*

[50] *See id.* at ¶¶ 188–90.

[51] *Id.* at ¶ 191.

[52] *Id.*

[53] ECF No. 193 at 6.

has made it clear that "this type of direct connection is not required."[54] Further, the Tenth Circuit has cited FTC's published guidance illustrating the kinds of "causal and incidental" help that cannot amount to "substantial assistance," including "'cleaning a telemarketer's office, delivering lunches to the telemarketer's premises, or engaging in some other activity with little or no relation to the conduct that violates the Rule."[55] The factual allegations of the complaint identified above clearly are much more substantial than those.

Graziosi and Yancey also argue that their activities did not constitute "substantial assistance" as discussed by a few district courts in other circuits.[56] As the Tenth Circuit has noted, "The FTC and courts have not purported to create an exhaustive list of activities that establish substantial assistance, and the law does not provide a special exemption for the first individual to come up with a novel way of assisting telemarketers."[57] The court does not find those district court cases, which involved different facts, illuminating on this point.

The question for the court is not whether Graziosi and Yancey directly engaged in the telemarketing, but rather whether there are sufficient facts alleged to make it plausible that they provided "substantial assistance," something more than "causal or incidental dealing with a seller or telemarketer that is unrelated to a violation of the Rule." That standard is met here. The combination of the foregoing allegations in the FAC and the reasonable inferences therefrom connect Graziosi and Yancey's activities with the alleged deceptive telemarketing practices of the Nudge Defendants. Their years-long, highly remunerated, assistance is properly alleged to have

---

[54] *F.T.C. v. Chapman*, 714 F.3d 1211, 1216 (10th Cir. 2013).

[55] *Id.*

[56] ECF No. 193 at 7–8.

[57] *Chapman*, 714 F.3d at 1217.

consisted of "more than mere casual or incidental dealing" with the Nudge Defendants' alleged violation of the TSR.[58]

### b. Requisite Knowledge or Conscious Avoidance of Knowledge

Graziosi and Yancey also argue that the FAC fails to adequately allege that they knew or consciously avoided knowing that the Nudge Defendants were engaged in any act or practice that violated the TSR.[59]

In addition to substantial assistance, the FTC also must plausibly allege that Graziosi and Yancey knew or consciously avoided knowing that the Nudge Defendants was engaged in any act or practice violating the TSR.[60] Although sufficient, "actual knowledge is not necessary under the 'conscious avoidance' standard" in the TSR.[61] "As the FTC has explained in its Compliance Guide, 'taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'"[62] "Knowledge or conscious avoidance of knowledge may be inferred when the person providing assistance receives complaints about violations."[63]

Here, the FTC alleges that Graziosi and Yancey served as the celebrity faces of the Nudge Defendants' enterprise.[64] During their tenure with the Nudge Defendants, Graziosi and Yancey received or were aware of various consumer complaints levied against the Nudge Defendants for

---

[58] TSR, 60 FR 43842-01 at 43852.

[59] ECF No. 193 at 10.

[60] *See* 16 C.F.R. § 310.3(b).

[61] *Chapman*, 714 F.3d at 1219.

[62] *Id.* (quoting *FTC, Complying with the Telemarketing Sales Rule* (Feb. 2011)).

[63] *F.T.C. v. Consumer Health Benefits Ass'n*, 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011) (citing *United States v. Dish Network, L.L.C.*, 667 F.Supp.2d 952, 961 (C.D.Ill.2009)*, aff'd sub nom. Fed. Trade Comm'n v. Consumer Health Benefits Ass'n*, 2011 WL 13254502 (E.D.N.Y. Oct. 12, 2011).

[64] *See* ECF No. 171 at ¶ 185.

deceptively marketing additional trainings and mentorships.[65] Complaints about the Nudge Defendants' enterprise appeared on Graziosi's company website as well as consumer review websites.[66] In September 2015, Graziosi received an email from a trainer and friend describing consumer situations that made her "physically sick" and "disgusted" concerning the Nudge Defendants' sales practices.[67] In September 2019, Graziosi and Finnegan discussed complaints about the Nudge Defendants' events appearing under Graziosi's name on the Trustpilot website.[68]

By October 2014, Yancey was aware of complaints posted on a consumer review site about the Nudge Defendants' events and practices.[69] In 2019, Yancey, Lewis, and Poelman discussed efforts to send positive reviews to the site to improve Yancey's brand image.[70] Additionally, in 2016 Yancey was personally named as a defendant in two lawsuits brought by consumers claiming they had been defrauded by the Nudge Defendants.[71]

From these allegations, the court concludes that Graziosi and Yancey's knowledge or conscious avoidance of knowledge of the Nudge Defendants' alleged TSR violations reasonably may be inferred from the facts alleged.[72] Accordingly, the FAC states a claim upon which relief may be granted.

### 2. The TSR Claim Is Not Time-Barred.

---

[65] *See id.* at ¶¶ 192–99.

[66] *Id.* at ¶¶ 195–97.

[67] *Id.* at ¶ 193.

[68] *Id.* at ¶ 196.

[69] *See id.* at ¶¶ 198, 199.

[70] *Id.* at ¶ 198.

[71] *Id.* at ¶ 194.

[72] *See* 16 C.F.R. § 310.3(b).

Graziosi and Yancey next contend that the statute of limitations has run on the TSR claim against them.[73] Specifically, they argue that Count Five should be dismissed "[b]ecause none of the specific allegations concerning Graziosi or Yancey's assistance or facilitation of activity prohibited by the TSR, or knowledge thereof, happened within the statute of limitations."[74]

The statute of limitations for a violation of the TSR brought under Section 19 of the FTC Act is three years.[75] The FTC filed its FAC on November 18, 2020.[76] The FTC alleges that Graziosi and Yancey were the "primary celebrities" used by the Nudge Defendants to market their training programs "from 2012 until this lawsuit was filed in November 2019."[77] The FTC further alleges that Graziosi and Yancey provided substantial assistance to the Nudge Defendants and continued to have knowledge of the Nudge Defendants' deceptive acts and practices as recently as 2019.[78] Specifically, it alleges that Graziosi discussed monitoring consumer review sites for complaints against the Nudge Defendants' practices in September 2019.[79] Yancey had similar discussions with the Nudge Defendants in August 2019 and, in September 2019, he spoke about creating a YouTube video to combat negative review videos.[80]

---

[73] ECF No. 193 at 11–12.

[74] *Id.* at 12.

[75] *See* 15 U.S.C. § 57b(d); *see also* ECF No. 171 at ¶ 272 (citing Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b)).

[76] *See* ECF No. 171.

[77] *Id.* at ¶¶ 185–87.

[78] *See id.* at ¶ 196 (alleging that, "in September 2019, Graziosi and Finnegan discussed in text messages negative posts about the Nudge Defendants' events appearing under Graziosi's name on the Trustpilot website"); *id.* at ¶ 198 (alleging that, "[a]s recently as July and August 2019, Yancey discussed with Lewis and Poelman, among others, efforts to send positive reviews to Yelp to improve Yancey's brand image"); *id.* at ¶ 200 (alleging that in September 2019, "Yancey and Response's Chief Marketing Officer discussed the need to create a video of Yancey talking about common real estate scams based on bullet points prepared by the Nudge Defendants" to counter consumer-posted YouTube videos describing the Nudge Defendants' sales practices as a scam).

[79] *Id.* at ¶ 196.

[80] *Id.* at ¶¶ 198, 200.

The Complaint sufficiently alleges that Graziosi and Yancey provided substantial assistance to the Nudge Defendants, with knowledge of the Nudge Defendants' deceptive practices within the limitations period. Because the FAC alleges Graziosi and Yancey's continued involvement within the limitations period, the TSR claim is not time-barred.

## ORDER

For the reasons stated in this Memorandum Decision and Order, the court DENIES Defendants Graziosi and Yancey's motion to dismiss.[81]

Signed July 26, 2021.

BY THE COURT

David Barlow
United States District Judge

---

[81] ECF No. 193.