UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiff,<br><br>v.<br><br>NUDGE, LLC, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO EXCLUDE EXPERT REPORTS (DOC. NOS. 238 & 239)**<br><br>Case No. 2:19-cv-00867<br><br>District Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

In civil litigation, parties must timely disclose reports and supplemental reports from expert witnesses. Fed. R. Civ. P. 26(a)(2)(B), (a)(2)(D), (e)(1)(A), (e)(2). Defendants argue two of Plaintiffs' supplemental expert reports should be excluded as untimely because they do not constitute proper supplemental reports under Rule 26(e) of the Federal Rules of Civil Procedure. Specifically, Defendants seek to exclude: (1) the supplemental expert report of Patrick McAlvanah, and (2) the revised supplemental expert report of Teo Nicolais. (Defs.' Mot. to Exclude the New Expert Report of Patrick McAlvanah ("Mot. to Exclude McAlvanah Report"), Doc. No. 238; Defs.' Suppl. to Their Mot. to Exclude New Expert Report of Patrick McAlvanah, to Also Exclude New Expert Report of Teo Nicolais ("Mot. to Exclude Nicolais Report"), Doc. No. 239.) Although the reports exceeded the bounds of permissible supplementation under Rule 26(e), exclusion is unwarranted because their untimely disclosure was harmless. Accordingly, the court denies Defendants' motions to exclude these expert reports.

1

## BACKGROUND

On November 5, 2019, the Federal Trade Commission ("FTC") and the Utah Division of Consumer Protection ("Division") brought this action against Defendants, asserting claims for violations of federal and state consumer-protection laws. (Compl. ¶¶ 1–2, Doc. No. 4.) The FTC and the Division allege Defendants ran a "deceptive scheme" involving: (1) real estate investment seminars in which they "misrepresented to consumers that they will be taught a proven formula on how to make substantial money from investing in real estate"; (2) telemarketing calls to pitch one-on-one real estate coaching; and (3) the sale of investment properties. (*Id.* ¶¶ 3, 7–8.) Plaintiffs later amended their complaint to add additional defendants. (*See* First Am. Compl., Doc. No. 171.)

Plaintiffs' deadline to serve expert reports was March 23, 2021. (First Am. Scheduling Order, Doc. No. 184.) The parties informally agreed to extend this deadline to March 29 or 30, 2021. (*See* Mot. to Exclude McAlvanah Report 1, Doc. No. 238 (stating the parties stipulated to extend this deadline to March 29); Mot. to Exclude Nicolais Report 2, Doc. No. 239 (stating the parties stipulated to extend this deadline to March 30).) Defendants' deadline to serve expert counter reports was June 3, 2021, but the parties informally agreed to extend it to June 17, 2021. (First Am. Scheduling Order, Doc. No. 184; Mot. to Exclude McAlvanah Report 2, Doc. No. 238.) On June 28, 2021, the parties jointly moved for extensions of the expert discovery deadline and subsequent deadlines to facilitate the scheduling of expert depositions. (Joint Mot. to Am. Scheduling Order, Doc. No. 227.) The court granted the motion and extended the expert discovery deadline to August 31, 2021. (Second Am. Scheduling Order, Doc. No. 228.) The court later set October 18, 2021 as the deadline for filing motions for summary judgment and

permitted motions to exclude expert testimony to be filed thirty days after a ruling on the summary judgment motions. (Third Am. Scheduling Order, Doc. No. 253.)

Dr. McAlvanah's Reports

On March 29, 2021, Plaintiffs served the original expert report of Dr. Patrick McAlvanah. (*See* Mot. to Exclude McAlvanah Report 1, Doc. No. 238; Ex. 1 to Mot. to Exclude McAlvanah Report, Expert Report of Patrick McAlvanah ("Original McAlvanah Report"), Doc. No. 238-1.) Dr. McAlvanah is an economist who has worked for the FTC since 2008. (Original McAlvanah Report ¶ 1, Doc. No. 238-1.) As relevant here, one portion of Dr. McAlvanah's report indicates that, in April 2020, the FTC case team provided him with an Excel workbook entitled "Response Telemarketing Calls," which contained data related to 3,935 telemarketing calls by Defendants. (*See id.* ¶¶ 19–20.) From this data, Dr. McAlvanah determined calls were made to 2,335 unique phone numbers. (*Id.* ¶ 21.) The FTC asked Dr. McAlvanah to provide a random sample of fifty telephone numbers, along with a list of all calls placed to these randomly selected phone numbers. (*Id.* ¶ 19.) The report states Dr. McAlvanah provided this information, and otherwise describes the analysis Dr. McAlvanah performed on the workbook. (*Id.* ¶ 21.)

On June 17, 2021, Defendants served a counter report from their own expert, Dr. Brian Cadman. (Ex. 2 to Mot. to Exclude McAlvanah Report, Expert Witness Report ("Cadman Counter Report"), Doc. No. 238-2.) Dr. Cadman opined "the sample described in the McAlvanah report is not sufficient to make inferences about representations made by [Defendants] during telemarketing sales calls offering real estate coaching." (*Id.* at 12.) According to Dr. Cadman, the original sample of 3,935 calls was ill-defined and only included calls from a specific time period. (*Id.* at 5–6.) Further, Dr. Cadman explained that the random sample of fifty phone numbers generated by Dr. McAlvanah included customers who purchased

3

training and coaching on topics other than real estate, such as tax strategy and stock market trading, which are not at issue in this case. (*Id.* at 6–7.) Dr. Cadman found only fourteen customers, from the sample of fifty, purchased one-on-one real estate coaching through telephone sales. (*Id.* at 7.)

On July 8, 2021, Plaintiffs served a "supplemental" report from Dr. McAlvanah. (Ex. 3 to Mot. to Exclude McAlvanah Report, Supplemental Expert Report of Patrick McAlvanah ("Suppl. McAlvanah Report"), Doc. No. 238-3.) Dr. McAlvanah explained that, in April 2021, the FTC asked him to provide "an additional random sample" of eighty phone numbers based on a subset of the "Response Telemarketing Calls" workbook restricted to real estate calls (among other restrictions). (*Id.* ¶ 3.) According to the supplemental report, using the requested restrictions, Dr. McAlvanah provided a random sample of eighty unique phone numbers, which were associated with 140 calls. (*Id.* ¶ 4.)

<u>Mr. Nicolais' Reports</u>

On September 27, 2019, before this case was filed, Plaintiffs served the original expert report of Teo Nicolais. (*See* Ex. 1 to Mot. to Exclude Nicolais Report, Expert Report on Response Marketing Group's Real Estate Training Program ("Original Nicolais Report"), Doc. No. 239-1.) Mr. Nicolais was engaged to review training materials and educational content from Defendants' real estate investment seminars. (*Id.* at 4–5.) As relevant here, Mr. Nicolais opined that (1) the seminars "did not accurately convey the risks and challenges of the [p]roperty [f]lipping strategies they described," and (2) the real estate property software Defendants offered to consumers "appear[ed] to be similar to widely accessible software products available at minimal expense or for free." (*Id.* at 6–8.)

On March 30, 2021, Plaintiffs served a supplemental expert report from Teo Nicolais, which updated his opinions based on new information obtained in discovery after this case was filed. (*See* Ex. 2 to Mot. to Exclude Nicolais Report, Suppl. Expert Report on Response Marketing Group's Real Estate Training Program ("Suppl. Nicolais Report"), Doc. No. 239-2.) As relevant here, Mr. Nicolais analyzed seventy-seven "example transactions" used in Defendants' training sessions and compared them with data from national property flipping reports. (*Id.* at 35–46.) Mr. Nicolais opined the example transactions "had no reasonable basis in market reality" and overstated the profitability of property flipping. (*Id.* at 44.) Mr. Nicolais also analyzed information obtained in discovery regarding subscription renewal rates for customers who purchased Defendants' software. (*Id.* at 72–74.) Mr. Nicolais concluded only a small number of customers renewed their software subscriptions, suggesting the software was not effective at helping customers consistently earn money through property flipping. (*Id.*)

One June 15, 2021, Defendants served the expert counter report of Paul Habibi. (Ex. 3 to Mot. to Exclude Nicolais Report, Expert Report of Paul Habibi ("Habibi Counter Report"), Doc. No. 239-3.) As relevant here, Mr. Habibi opined that Mr. Nicolais' analysis of Defendants' example transactions was flawed because, among other issues, it contained transcription errors and repetitive examples, it conflated profit numbers between distinct types of real estate deals, it failed to exclude example transactions with insufficient data, and it failed to consider the complete underlying data from the national property flipping reports. (*Id.* ¶¶ 54–59.) Mr. Habibi also critiqued Mr. Nicolais' analysis of software renewal rates, opining that Mr. Nicolais made mathematical errors which artificially deflated the renewal rate calculation. (*Id.* ¶ 89 & n.80.)

On July 19, 2021, Plaintiffs served a "revised" supplemental report from Mr. Nicolais. (Ex. 4 to Mot. to Exclude Nicolais Report, Revised Suppl. Expert Report on Response Marketing

Group's Real Estate Training Program ("Revised Suppl. Nicolais Report"), Doc. No. 239-4.) In this revised report, Mr. Nicolais asserted that Mr. Habibi "challenged aspects of [Mr. Nicolais'] analysis without showing how or to what degree his critiques, even if accepted, would affect the overall conclusions drawn from those analyses." (*Id.* at 5.) Mr. Nicolais stated the revised report "address[ed] critiques from the Habibi Report, under[took] the mathematical analyses Mr. Habibi failed to complete, and demonstrate[d] that even after considering Mr. Habibi's critiques, [Mr. Nicolais'] opinions [were] well supported." (*Id.* at 5–6.) Specifically, Mr. Nicolais revised his analysis of the example transactions from Defendants' training programs to include only fifty-seven transactions—excluding twenty-seven example transactions from the prior report and adding seven example transactions previously left out—in order to show that "even excluding transactions for which there may be disagreement, [Mr. Nicolais'] opinions [were] still supported by the data." (*Id.* at 6 n.2; *see also id.* at 36–51.) Mr. Nicolais also recalculated the software renewal rates using the method suggested by Mr. Habibi and concluded the renewal rates remained low. (*Id.* at 6, 78–80.)

## LEGAL STANDARDS

Rule 26(a)(2) requires expert witness disclosures to be accompanied by a written report containing, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) requires a party who has made a disclosure under Rule 26(a) to "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). For expert witnesses, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). "Any additions or changes to

this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.*

Rule 37 of the Federal Rules of Civil Procedure provides, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Rule 16 provides a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This rule also provides "the court may issue any just orders" if a party "fails to obey a scheduling order." Fed. R. Civ. P. 16(f)(1)(C).

**ANALYSIS**

Defendants argue Dr. McAlvanah's supplemental report and Mr. Nicolais' revised supplemental report should be excluded under Rules 37 and 16. (Mot. to Exclude McAlvanah Report 4–6, Doc. No. 238; Mot. to Exclude Nicolais Report 6–8, Doc. No. 239.) They contend these reports exceed the bounds of proper supplementation under Rule 26(e) in that they attempt to correct defects in the prior reports, which Defendants' experts identified. (Mot. to Exclude McAlvanah Report 5–6, Doc. No. 238; Mot. to Exclude Nicolais Report 6–8, Doc. No. 239.) According to Defendants, the supplemental reports are properly characterized as new expert reports under Rule 26(a) and should be excluded as untimely under the scheduling order. (Mot. to Exclude McAlvanah Report 5–6, Doc. No. 238; Mot. to Exclude Nicolais Report 6–8, Doc. No. 239.) Defendants contend the untimely disclosure of these reports was not harmless because Defendants spent considerable resources critiquing the experts' prior reports, and the FTC's experts should not be permitted a "do-over." (Mot. to Exclude McAlvanah Report 6, Doc. No. 238; Mot. to Exclude Nicolais Report 8, Doc. No. 239.)

7

Plaintiffs argue the reports at issue are properly characterized as supplemental reports under Rule 26(e), as they are limited in nature. (Pls.' Resp. to (1) Defs.' Mot. to Exclude the New Expert Report of Patrick McAlvanah and (2) Defs.' Suppl. to Exclude New Expert Report of Patrick McAlvanah, to Also Exclude New Expert Report of Teo Nicolais ("Resp.") 1, 8–10, Doc. No. 242.) In the alternative, Plaintiffs argue the reports should not be excluded under Rule 37 because Defendants have not been prejudiced by their untimely submission. (*Id.* at 1, 9–10.) Plaintiffs note the reports at issue were served weeks before the experts' scheduled depositions, and Defendants had the opportunity to fully depose these experts about their supplemental reports. (*Id.* at 9–10.)

As explained below, Dr. McAlvanah's supplemental report and Mr. Nicolais' revised supplemental report exceeded the bounds of permissible supplementation under Rule 26(e). Accordingly, they constitute new expert reports which were untimely under the scheduling order. Nevertheless, exclusion under Rule 37 or Rule 16 is unwarranted because the untimely disclosure was harmless.

A. The Reports Are Not Permissible Supplements Under Rule 26(e)

Courts in this circuit and other jurisdictions have held Rule 26(e) "does not permit a party to use the supplementing procedure to submit an amended or rebuttal report not based on new information." *Sibley v. Sprint Nextel Corp.*, No. 08-2063, 2013 U.S. Dist. LEXIS 61358, at *8 (D. Kan. April 30, 2013) (unpublished); *see also Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019) (finding a revised report was not a proper Rule 26(e) supplement where it made substantial revisions after significant flaws in the original report were revealed, and it was not based on new information); *Guevara v. v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) ("[A] party cannot abuse Rule 26(e) to merely bolster a defective or problematic

expert witness report." (internal quotation marks omitted)); *Equal Emp. Opportunity Comm'n v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (holding Rule 26(e) could not be used as a "loophole" to revise a party's expert disclosures in light of challenges to the expert's analysis). Similarly, "[a] supplemental expert report that states additional opinions or rationales or seeks to strengthen or deepen opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008) (internal quotation marks omitted). Instead, supplementation is permissible only to address "additional or corrective information that was unavailable when the expert made his or her initial report," or to make "relatively minor changes that simply correct inaccuracies in the original report." *Sibley*, 2013 U.S. Dist. LEXIS 61358, at *8. However, substantive changes to methodology or decisions about what data to include in the analysis exceed the bounds of permissible supplementation. *Id.* at *19–20.

Applying these principles, Dr. McAlvanah's supplemental report was not a permissible supplement under Rule 26(e). First, the supplemental report referred to data from the same Excel workbook Dr. McAlvanah analyzed originally. It was not based on new evidence or information. Second, the supplemental report did not merely correct inaccuracies in the original report by way of minor changes. Instead, Dr. McAlvanah applied new restrictions to the underlying dataset to provide an entirely different sample of phone numbers and associated calls than his original report contained. Third, the supplemental report appears to correct flaws in the original sample identified by Defendants' expert, Dr. Cadman. Although Dr. McAlvanah indicated he was asked to provide this second sample before Defendants served Dr. Cadman's counter report, the new restrictions he applied correlate with Dr. Cadman's criticisms of the original sample. For example, Dr. Cadman noted the original sample included phone numbers of

9

non-real-estate customers, and Dr. McAlvanah's supplemental report excluded this category of phone numbers. For these reasons, Dr. McAlvanah's supplemental report is properly characterized as a new expert report rather than a supplement under Rule 26(e).

Likewise, Mr. Nicolais' revised supplemental report was not a permissible supplement under Rule 26(e). Mr. Nicolais expressly indicated his revisions were intended to rebut Mr. Habibi's critiques of his prior report. Mr. Nicolais did not analyze new evidence or information previously unavailable, nor did he merely correct minor inaccuracies. He substantively revised his analyses of the example transactions used in Defendants' training sessions and the subscription renewal rates for Defendants' software. For the former, he changed the subset of example transactions used in his analysis—excluding twenty-seven transactions from the prior report and adding seven transactions previously left out—in response to Mr. Habibi's critiques. For the latter, he recalculated the software renewal rates using a methodology suggested by Mr. Habibi. In other words, although Mr. Nicolais' opinions did not change, he performed new analyses of the underlying data to support his opinions. Indeed, Mr. Nicolais expressly stated he was "completing the analysis that Mr. Habibi failed to undertake in light of his critiques." (Revised Suppl. Nicolais Report 36 n.41, Doc. No. 239-4.) Because Mr. Nicolais' revised report included new analyses based on preexisting information, it is not a proper supplement under Rule 26(e).

Plaintiffs' reliance on *Miller v. Pfizer, Inc.*, 356 F.3d 1326 (10th Cir. 2004), does not compel a different result. In *Miller*, the Tenth Circuit observed that "on occasion it may be appropriate to permit the party using the expert to submit supplements to the report in response to assertions by opposing experts that there are gaps in the expert's chain of reasoning." *Id.* at 1332. But the reports at issue here did not merely address gaps in the experts' chain of

reasoning. Instead, as outlined above, Dr. McAlvanah and Mr. Nicolais performed new analyses using either different subsets of the underlying data or a different methodology, in an apparent attempt to correct the flaws the opposing experts identified. This exceeds the bounds of permissible supplementation contemplated in *Miller*.

For these reasons, Dr. McAlvanah's supplemental report and Mr. Nicolais' revised supplemental report were not proper supplements under Rule 26(e). Accordingly, they were subject to the deadline for serving Plaintiffs' Rule 26(a) expert reports and were untimely.

B. <u>Exclusion Is Unwarranted Under Rule 37(c) or Rule 16(f)</u>

Expert reports which are not timely disclosed under Rule 26(a) are subject to exclusion under Rule 37 "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court has broad discretion in determining whether a Rule 26(a) violation is justified or harmless. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). In making this determination, the court considers: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

Applying these factors, courts have declined to exclude untimely expert reports and late-disclosed expert opinions where the disclosures occurred before expert depositions and well in advance of trial. *See, e.g.*, *Coffey v. United States*, No. Civ 08-0588, 2012 U.S. Dist. LEXIS 83154, at *28–29, 33–39 (D.N.M. May 26, 2013) (unpublished); *Sibley*, 2013 U.S. Dist. LEXIS 61358, at *24–25. In *Coffey*, the court found any prejudice and surprise was "low" where an amended expert report was disclosed approximately ten months before trial and before expert

11

depositions.[1] 2012 U.S. Dist. LEXIS 83154, at *28–29. The court further found the opposing party had sufficient opportunity to cure the prejudice where it received the amended report before conducting the expert's deposition "and could thus question him regarding these matters." *Id.* at *37. The court found the evidence would not significantly disrupt the trial because there was no indication the opposing party would need additional witnesses to combat the new testimony. *Id.* at *37–38. Finally, the court found no bad faith or willfulness where the party did not wait until the eve of trial to disclose the evidence. *Id.* at *38–39.

In *Sibley*, the court found portions of supplemental expert reports were untimely where they were not proper under Rule 26(e). 2013 U.S. Dist. LEXIS 61358, at *21–22. Nevertheless, the court declined to exclude the reports where the opposing party was aware of the proposed revisions before the deadlines to file dispositive motions and *Daubert* motions, and where "defense counsel questioned plaintiffs' experts about the proposed changes at their depositions." *Id.* at *24. The court found any prejudice could likely be cured where the trial was more than five months away and the defendants could seek leave to reopen expert discovery or supplement *Daubert* motions. *Id.* Finally, the court noted there were no allegations that the experts intentionally withheld information from earlier reports. *Id.* at *25. Instead, the court found the modifications arose "out of the expert rebuttal and deposition process, and are the result of a conscientious effort to ensure that their analyses are correct such that this case is decided on a correct presentation of the facts." *Id.* at *25. Notably, the *Sibley* court reached this conclusion

---

[1] Defendants argue *Coffey* is distinguishable because the court found the party seeking exclusion failed to establish the amended expert report was untimely. *See* 2012 U.S. Dist. LEXIS 83154, at *29–33. But the court also found that "to the extent the disclosures were untimely," the applicable factors set forth in *Woodworker's Supply* weighed against exclusion. *Id.* at *33–39. Accordingly, the *Coffey* court's analysis of these factors is instructive here.

notwithstanding the fact that several revisions were made in response to opposing experts' counter reports—which the court found impermissible under Rule 26(e). *Id.* at *13, 19–20.

The factors in *Woodworker's Supply* weigh against excluding Dr. McAlvanah's supplemental report and Mr. Nicolais' revised supplemental report. Both reports were served shortly after Defendants' counter reports, several weeks before the experts' scheduled depositions, and many months before the deadline to file motions for summary judgment. (*See* Resp. 3, Doc. No. 242 (indicating Dr. McAlvanah's deposition was scheduled for July 27, 2021); *id.* at 10 (indicating Mr. Nicolais' deposition was scheduled for August 11, 2021).) In other words, although the reports were untimely, their disclosure was not substantially delayed. Further, Defendants had an opportunity to question Plaintiffs' experts regarding the new analyses presented in their reports and ample time to formulate a rebuttal before summary judgment briefing. Under these circumstances, any prejudice or surprise resulting from the untimely reports was minimal and remediable. Likewise, the untimely reports are unlikely to disrupt trial, where no trial has yet been set and there is no indication Defendants will need new experts to rebut the revised reports. Accordingly, the first, second, and third factors weigh against exclusion in this case.

Defendants argue they are prejudiced because they invested significant time and expense on their own experts' critiques of the original reports, and they argue Plaintiffs' experts should not be permitted a "do-over." (Mot. to Exclude McAlvanah Report 6, Doc. No. 238; Mot. to Exclude Nicolais Report 8, Doc. No. 239.) But the new analyses in the supplemental reports represent only a small portion of expert opinions offered by Dr. McAlvanah and Mr. Nicolais in this case. The revisions cannot fairly be characterized as a wholesale "do-over" of the prior reports. Moreover, the new analyses address only some of the flaws identified by Defendants'

experts; many of the critiques set forth in counter reports appear to remain applicable. To the extent the new analyses required further rebuttal from Defendants' experts, the timing of the disclosures left ample time to do so. Defendants have not demonstrated any significant prejudice as a result of the untimely reports.

Finally, there is no basis to find Plaintiffs acted willfully or in bad faith. There is no evidence, for example, that Plaintiffs intentionally withheld information in the experts' original reports or willfully violated the scheduling order. Rather, Plaintiffs took the position that the reports at issue were not subject to the Rule 26(a) disclosure deadline because they constituted proper supplements under Rule 26(e). Although they did not prevail on this argument, there is no indication Plaintiffs made it in bad faith or for purposes of delay—particularly where they served the revised reports shortly after receiving the counter reports which prompted the revisions. Plaintiffs' failure to seek an extension of the Rule 26(a) disclosure deadline or leave of court to file rebuttal reports reflects their misconception as to the parameters of permissible supplementation under Rule 26(e) as opposed to bad faith or willfulness. Accordingly, this factor also weighs against exclusion.

For these reasons, the court will not exclude Dr. McAlvanah's supplemental report or Mr. Nicolais' revised supplemental report under Rule 37(c). Likewise, where there was no substantial delay in disclosing the revised reports and no indication of a willful violation of the scheduling order, exclusion is unwarranted under Rule 16(f).

## CONCLUSION

Defendants' motions to exclude Dr. McAlvanah's supplemental report and Mr. Nicolais' revised supplemental report, (Doc. Nos. 238 and 239), are DENIED.

DATED this 18th day of March, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge