# EXHIBIT 1

PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF HOWARD BEALES

Expert Report of Dr. J. Howard Beales

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISION, and | : |
| | : |
| UTAH DIVISION OF CONSUMER | : |
| PROTECTION, | : |
| | : **Case No.** |
| Plaintiffs, | |
| | **2:10-cv-00867** |
| v. | |
| | |
| NUDGE, LLC, a Utah limited liability | |
| company, et al. | |
| | |
| Defendants. | |

# EXPERT REPORT OF HOWARD BEALES

**JUNE 17, 2021**

i

# Table of Contents

I.    Background and Professional Experience ........................................................................... 1

II.   Scope of Engagement ...................................................................................................... 2

III.  The Preview Events Do Not Make Earnings Claims ........................................................ 2

   A.   Express Disclaimers ...................................................................................................... 3

   B.   Integrated Training Claims ........................................................................................... 5

   C.   Specific Transactions are Explicitly Identified as Case Studies ...................................... 7

   D.   Numerical Claims Rely on Outside Statistical Sources .................................................. 8

IV.   Conclusion ...................................................................................................................... 9

# I.    Background and Professional Experience

1.     I am Emeritus Professor of Strategic Management and Public Policy at the George Washington University School of Business, where I taught from 1988 through 2019.  I received my Ph.D. in Economics from the University of Chicago in 1978, and I graduated magna cum laude and Phi Beta Kappa from Georgetown University in 1972.  From 2001 through 2004, I served as the Director of the Bureau of Consumer Protection at the Federal Trade Commission ("FTC" or "the Commission").  During my tenure, the Commission filed 258 federal court cases and obtained orders for nearly $1.3 billion in consumer redress.  These cases included numerous cases challenging advertising claims for dietary supplements, substantiation for other product claims, and business opportunity claims.  From 1981 to 1987, I served as the Bureau of Consumer Protection Associate Director for Policy and Evaluation, Acting Deputy Director, and Assistant to the Director.  I was also an economist with the Bureau of Economics from 1977 to 1981.  A copy of my curriculum vitae is attached as **Exhibit 1**.

2.     I have given speeches and written articles on the FTC and various aspects of consumer protection regulation, including advertising regulation.  I have also testified before Congress regarding consumer protection matters, including spam, identity theft, internet fraud, and dietary supplement fraud.

3.     While with the Bureau of Consumer Protection from 1981 to 1987, I was heavily involved in developing the FTC's *Policy Statement Regarding Advertising Substantiation* and its *Policy Statement on Deception*.[1]  Based on my ongoing work in the field, and regular interactions with the FTC, these Policy Statements remain the foundation of the FTC's approach to advertising regulation.

---

[1] FTC, *Policy Statement Regarding Advertising Substantiation* (1983), appended to Thompson Med. Co., Inc., 104 F.T.C. 648 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987); FTC, *Policy Statement on Deception* (1983), appended to *Cliffdale Assoc., Inc.*, 103 F.T.C. 110 (1984).

1

## II.    Scope of Engagement

4.    I have been retained by Venable LLP on behalf of its clients in this matter to evaluate whether there are earnings claims in the preview events for real estate training.  A list of the materials I reviewed is attached as **Exhibit 2**.  I am being compensated for my time at the rate of $1150 per hour.  My compensation does not depend in any way on my conclusions or the outcome of this litigation.

## III.    The Preview Events Do Not Make Earnings Claims

5.    The FTC's First Amended Complaint alleges that Nudge represents that consumers "are likely to earn substantial income," and "that consumers who purchase the Workshops or the Advanced Trainings are likely to earn several thousand dollars monthly."[2]  Examining the preview events to assess this allegation is appropriate, because the preview events are the first time consumers are actually asked to make a purchase decision.  As discussed below, however, the preview events cast the entire event, as well as the Workshops, as training events.   Training offers knowledge and skills that can be applied to yield a return but training itself implies that the consumer will have to take the necessary steps to apply what has been learned.  I make four essential points in reaching this conclusion:

A.    There are clear express disclaimers at the beginning of the preview events and in the Event Guide distributed to attendees at the event.

B.    Rather than relying solely on these express disclaimers, claims that the company only is providing training and disclosures of both risk and the need for effort are embedded throughout the preview events.

C.    Specific transactions referenced in the preview events are explicitly identified as case studies, a common method for presenting and explaining business strategies.

---

[2] FAC for Permanent Injunction and Other Equitable Relief, ECF No. 173, ¶¶ 78, 204.

D.     The only numerical claims made in the preview events about results are specifically attributed to outside statistical sources and are not challenged as misleading in the complaint.

## A.     Express Disclaimers

6.     An express disclaimer appears early in each preview event.  The disclaimer is both shown on a slide and read aloud.

7.     Before even playing the disclosure, the Sandy Springs Georgia preview event includes a motivational presentation featuring a dozen unidentified speakers and two testimonials who emphasize the importance of working hard,[3] including a quotation from Theodore Roosevelt: "The credit belong to the man who is actually in the arena, whose face is marred by dust and sweat and blood, who strives valiantly, who errs, who comes short again and again because there is no effort without error and shortcoming, but who does always actually strive to do the deeds, …"[4] Another speaker urges attendees to "Know that life is not fair and that you will fail often."[5]  The testimonials emphasize training, not earnings.  Crystal states that "I know I'd have to pay a lot of money for this over years' time to get what I'm getting in a very short period of time."[6]  Catherine says that "The education has been laid out very step by step which is critical in a learning process."[7]

8.     The following introduction and disclaimer occur immediately after the motivational discussion at the Sandy Spring preview event:

> Thank you for attending. The presentation you're about to participate in is brought to you by Response, a training and education company. We do not sell a business opportunity, get rich quick program or guaranteed moneymaking system. We believe with education, you can be better prepared to make investment decisions, but we cannot guarantee your success in investing.
>
> We do not make earnings claims, efforts claims, return on investment claims or claims that our training will make you any money. Investing of any kind carries risk and it is possible to lose some or all of your money. The training provided is general in nature and may not be appropriate for all individuals. It is highly recommended that you work with licensed professionals regarding securities and

---

[3] *See* Nudge.0000017810, p. 4.
[4] *See* Nudge.0000017810, p. 5.
[5] *See* Nudge.0000017810, p. 6.
[6] *See* Nudge.0000017810, p. 4.
[7] *See* Nudge.0000017810, p. 5.

3

other investments. We are not a licensed broker, registered investment advisor, tax accountant or a law firm. It is highly recommended that you consult with appropriately licensed experts before engaging in any specific investment [transaction]. The companies hired presenters, trainers and staff may hold various registration and licensing, but they do not operate in such a capacity as agents of the company. Please be aware that the training may include case studies and hypothetical examples that are used for illustrative and education purposes only. You should not view such illustrations as common or typical. Each investor and circumstances of investment are unique. Customer results vary significantly and depend on many factors such as market conditions and individual effort, time and skill of the student. For more information, please visit www.response.com/disclosure.

9. Just as the motivational introduction seeks to motivate students to work hard and rise to challenges, the disclosure at the beginning of the presentation is likely to set attendees' expectations as they hear other information during the course of the event. They are told that this is an education event, not a get rich quick scheme or a business opportunity, that there are risks, and that there is no guarantee of success. Subsequent statements will likely be interpreted against this backdrop.

10. The printed Event Guide distributed to each attendee at the Sandy Springs preview event also includes an explanation of the event, integrated into the text rather than standing alone. A paragraph headlined "our central focus is you" states that "Snap Flip is the seller and provider of direct to consumer financial training."[8] The paragraph headlined "how we help you succeed" states that "we offer direct to consumer financial education." Buyers "will be taught many techniques which have brought financial success to others. However, we do not guarantee your success … we do not make earnings claims, efforts claims, return on investment claims, or claims that our techniques will make you any specific amount of money. A separate footnote disclaimer provides that: "We provide real estate and stock market education and training. We do not sell a business opportunity. We make no earnings or return on investment claims."[9] It appears that attendees receive the Event Guide when they arrive, so they have time to read it before the actual program begins.

---

[8] Response.FTC.00008941at -8943.
[9] Response.FTC.00008941at -8943.

11.     The Idaho preview included a similar audio and video disclosure, advising that "[m]ost students that attend this introductory preview event do not make money," and advising attendees to consult their own legal, accounting, and tax advisors.[10]

## B.     Integrated Training Claims

12.     Moreover, Nudge does not rely solely on up-front disclosures of the nature of its training. Instead, disclosures are integrated throughout the presentation. At the Idaho preview event, for example, the presenter discusses barriers to moving forward in real estate investing, and states that "Our number one reason is lack of knowledge,"[11] and goes on to explain that "we as a company, we offer training and education. We offer classes."[12] Later, the presentation includes a video testimonial where the endorser states that "it was very good training."[13]

13.     Statements about investment risk and the need for effort are also embedded throughout the preview events. These are not separate disclosures that contradict the main message; rather, they *are* the message the preview events convey. For example, at the Sandy Springs preview, for example, the presenter states that "every investment entails risks." Risks are tied directly to training as well: "Rookies make mistakes."[14] The need for effort is also discussed. The presenter states that "it takes work. If you're not willing to put the work in you should not do this program."[15] In discussing a flipping deal, the presenter states that "nobody gets rich on this. This is not about – get rich quick does not work in any investment. I've never found get rich quick that works."[16] In a discussion of buying tax liens, the presenter notes that "if you buy a lien on a piece of swamp land and then they don't pay you back, you're the proud owner of a gator farm, everybody understand that?"[17]

---

[10] *See* FTC-00242917, p. 11.
[11] *See* FTC-00242917, p. 25.
[12] *See* FTC-00242917, p. 26.
[13] *See* FTC-00242917, p. 99.
[14] *See* Nudge.0000017810, p. 12.
[15] *See* Nudge.0000017810, p. 13.
[16] *See* Nudge.0000017810, p. 19–20.
[17] *See* Nudge.0000017810, p. 34.

14.    The Idaho preview event includes similar integrated claims.  Regarding potential profits from flipping transactions, the presenter states that "I'm going to talk about the potential to make money with real estate flipping.  Y'all know that it's there.  But to be fair, I'm going to talk about the other side as well."[18]  The presenter discusses the need for effort as well: "I never use the word easy.  But if you put the time into it, it's (inaudible).… You put less time into it, you still do deals, you just do less deals. … I can't guarantee how much money you'll make or how big the deals will be or how fast they'll come to you."[19]  As in the Sandy Springs event, the presenter disavows get rich quick schemes:  "So real estate has never been get rich quick, never has been, never will be. … Usually it's create wealth over time following the right path, with consistent efforts down the right path."[20]  He continues, "What we're doing here today is not providing a secret sauce to everybody.  That's not what it is.  What we're providing are the proven tools…"[21]  Again, the risks, limitations, and requirements are integral parts of the overall message.

15.    Even some of the testimony cited in the FTC's Motion for a TRO indicates that attendees understood that the program offered training, rather than earnings claims.  One witness, Richard Ruby, said of the preview event that it "peaked my interest as how could this company offer me an education that I would be able to go out and do the same transactions that a real estate agent could do," but "they just threw out teasers. They didn't give any specific information as far as, if you do this, you will make this . . . .").[22]  He went on to say, "what I took away is that [the speakers] were well versed in the real estate business and that they had been making good money[ ] by performing the different real estate transactions that Response was going to teach me and the other students how to do."[23]  This testimony is inconsistent with the notion that preview events included earnings claims.  In fact, Ruby testified in his deposition that "The way I understood it is that once you went through their training program and you used the principles that were taught in

---

[18] *See* FTC-00242917, pp. 23–24.
[19] *See* FTC-00242917, pp. 105–106.
[20] *See* FTC-00242917, p. 81.
[21] *See* FTC-00242917, pp. 81–82.
[22] Ruby IH, Tab 16, at 18:8–19:22, cited in TRO Motion note 17.
[23] Ruby IH, Tab 16, at 16:24–17:4, cited in TRO Motion note 21.

their program, you could possibly make money."[24]  He also testified that the presenter did not say he was guaranteed to make money in real estate,[25] and that Response did not guarantee that students would succeed.[26]

16.     Of course, an important motivation for purchasing training is the prospect that the education obtained can be put to profitable use.  The same is true of any investment in education.  Most colleges and universities simply offer education.  The offer does not become an "earnings claim" simply because financial gain is part, or even a primary, motivation for a student's decision to invest.  Moreover, most academic institutions host events featuring prominent alumni, if only to promote the name of the institution.  The George Washington School of Business held many events that featured alumnus Colin Powell.  Plainly, however, there is no reasonable interpretation of those events as an implied claim that a GW education will make one Secretary of State, or even a successful general.

17.     The Idaho preview event explicitly addressed the analogy to college.  In discussing his decision to attend college, the presenter stated that he went to college because "…my odds of success in life financially were going to be greater with it than without it.  The only reason why I did it.  Same thing is applicable here in my opinion."[27]  He continued, "people pay us to show them how to do it.  That means there's a tuition for our paid training."[28]  And like any other education, results depend on further effort by the student.

## C.     Specific Transactions are Explicitly Identified as Case Studies

18.     Case studies are a common method for presenting and explaining business strategies.  They enable students to see the implementation of a strategy in a concrete setting, to better understand the proper application of the strategy and its implications.  Case studies, however, are only examples.  They are not claiming that everyone who follows the strategy will achieve the same results that occurred in the case used as the example.

---

[24] *See* Deposition of Richard J. Ruby, p. 70 ("Deposition").
[25] Deposition pp. 69–70.
[26] Deposition p. 114.
[27] *See* FTC-00242917, p. 64.
[28] *See* FTC-00242917, p. 64.

19.     When preview events discuss specific transactions, they are presented as case studies.  At the Sandy Springs event, the presenter introduces the "quick flip" strategy with a specific, profitable example.  He is express, however, that the point is the strategy, not the specific result: "I'm going to share a strategy; you're going to love this."[29]

20.     At the Idaho preview event, the presenter is even more specific in presenting an example.  He states:

> I do not want you to focus on the numbers in the deal.… Because on every deal that you will ever do, the numbers are going to what? … Change.  Every single time. Numbers fluctuate, they go up and down.  But the strategies that we utilize to do them stay the same every time.[30]

To emphasize the point, he adds: "Numbers change.  Property changes.  Strategies stay the same."[31]

21.     There are circumstances in which lessons can be learned by studying instances in which a strategy failed.  Particularly in a relatively short presentation, however, using examples of successful implementation is far more likely to make the point.  For example, one of the most used cases in teaching about business response to a crisis is Johnson & Johnson's response to the Tylenol poisonings in the 1980s.  Many professors have used the case to help students understand what makes a response effective.

## D.     Numerical Claims Rely on Outside Statistical Sources

22.     In some instances, preview event presentations do include specific numerical results about an investment strategy generally, rather than using only examples.   In the Idaho preview event, for example, the presenter provides data on the average profit from flipping transactions, completed within one year, stating that average profit per deal was $64,000.  The data is expressly attributed to a well-respected outside source, Realty Track, however, and identified as including all such transactions in the U.S.  Nothing in the complaint suggests that the description of the data is in any way misleading.

---

[29] *See* Nudge.0000017810, p. 13.
[30] *See* FTC-00242917, pp. 31–32.
[31] *See* FTC-00242917, p. 32.

8

23. Such claims are claims about market results, not about program performance. When truthful, they provide valuable information to a consumer who is trying to decide whether pursuing a flipping strategy is worth the time and effort. They do not become claims about program performance unless they are specifically connected to the program—these claims are not. Suppressing such information on the theory that some consumers might think it applies to this program specifically would deprive consumers of valuable information. That result would be inconsistent with both the First Amendment, and the FTC's long history of defending the value of truthful commercial speech.

## IV.     **Conclusion**

24. Based upon my review of a selection of Response Preview Event materials and other materials, as well as my experience with consumer protection matters, I find that the preview events do not make earnings claims and that Response adequately included disclaimers at the beginning and during the course of the preview events. Response aims to provide training and education and generally discloses both the risks and the need for effort and hard work throughout the preview events to succeed.

I hereby affirm under the penalty of perjury that the foregoing is true and correct.


Executed this 17th of June, 2021


Howard Beales

# CURRICULUM VITAE
## J. Howard Beales, III

Phones: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮       Born ▮▮▮▮▮▮▮
email: ▮▮▮▮▮▮▮▮▮▮▮▮       married, two children

## EDUCATION AND ACADEMIC HONORS

The University of Chicago, Chicago, Illinois. Ph.D. in Economics awarded June, 1978. Concentrated in Industrial Organization and Macroeconomic Theory. Received fellowships from the Earhart Foundation and the Walgreen Foundation.

Georgetown University, Washington, D.C. Awarded B.A. May, 1972. Magna Cum Laude, Phi Beta Kappa. Major in Economics. Named the outstanding student in economics by vote of the department faculty; numerous awards for excellence in intercollegiate debate.

## WORK EXPERIENCE

**Taskforce on Federal Consumer Financial Law, Consumer Financial Protection Bureau**, 2020, Member.

**Professor of Strategic Management and Public Policy, George Washington University,** August, 1988 - June, 2001; August, 2004 - Present. (Assistant Professor, 1988; Associate Professor 1991; Professor, 2010; Emeritus, 2020.) Department Chair, January 2014 – June 2017. Taught courses in applied microeconomics, managerial economics, and the relationship between business and government. Research interests include law and economics, economic and legal aspects of marketing and advertising, the new drug approval process, and other aspects of government regulation of the economy.

**Director, Bureau of Consumer Protection, Federal Trade Commission,** June, 2001 - August, 2004. Responsible for policy development, law enforcement, rulemaking activity, and consumer and business education for the nation's general purpose consumer protection agency. Numerous speeches, press conferences, and Congressional appearances to explain the Bureau, its mission, and its actions. With a staff of 270 and a budget of $100 million, the Bureau enforces more than 20 consumer protection statutes. Major accomplishments include:

- Redirected the Agency's approach to privacy to focus on consequences of information use and misuse.
- Proposed, promulgated, and implemented the National Do Not Call Registry.
- Worked with Congress and the Administration to develop and implement the Fair and Accurate Credit Transactions Act of 2003.
- Pursued an aggressive law enforcement program that produced the largest redress orders in FTC history and attacked high volume frauds promoted through heavy television advertising.

J. Howard Beales, III                    Curriculum Vitae                    Page 2

**Chief, Human Resources and Housing Branch, Office of Information and Regulatory Affairs, Office of Management and Budget,** June, 1987 - July, 1988. OIRA reviewed all proposed and final regulations under Executive Order 12291 to assure that agencies only regulate based on adequate information that the benefits of regulation exceed the cost. Under the Paperwork Reduction Act, agencies also needed OIRA's approval for any activity that imposes information collection responsibilities on the private sector. The Branch handled all transactions with the Departments of Labor, Health and Human Services, Housing and Urban Development, and Treasury, as well as the Office of Personnel Management, Equal Employment Opportunity Commission, and the Veterans Administration. Major responsibilities included:

- Work with the Presidential Task Force on Regulatory Relief to develop proposals to accelerate the new drug approval process.
- Review of proposed and final regulations from the **Food and Drug Administration,** including a proposed rule to permit health claims on food labels, a proposed rule to restrict use of sulfiting agents on certain foods, and various OTC drug monographs.
- Review of paperwork and regulations from the **Occupational Safety and Health Administration,** including the hazard communication rule, the proposal to update exposure limits for some 400 substances, and rules concerning formaldehyde, benzene, and ethylene oxide.
- Review of **Health Care Financing Administration** rules concerning quality standards for clinical laboratories, nursing home requirements, Medicare coverage policy, and Medicaid drug reimbursement policies.

**Associate Director for Policy and Evaluation, Bureau of Consumer Protection, Federal Trade Commission,** August, 1983 -June, 1987. The Division's multidisciplinary staff actively participated in developing Commission policy regarding all aspects of consumer protection, focusing on unfair or deceptive practices (such as deceptive advertising) and various consumer credit statutes. It reviewed proposed law enforcement matters from five other divisions and ten regional offices to ensure consistency with policy objectives. Accomplishments and responsibilities included:

- Received **Award for Distinguished Service** in June, 1987, and **Senior Executive Service Awards** for outstanding management performance in 1984 and 1986.
- Policy development in a number of key areas, including the Commission's Deception and Advertising Substantiation Policy Statements and civil penalty assessments.
- Evaluating staff recommendations for formal investigations, administrative or district court litigation, consent negotiations, and rulemaking, as well as reviewing existing rules and policies.
- Supervised the Commission's program of commenting on regulatory matters before other federal and state agencies.
- Supervising the conduct of empirical studies of general policy issues, rulemaking proposals, and individual cases.

April 27, 2021

J. Howard Beales, III                 Curriculum Vitae                          Page 3

**Acting Deputy Director, Bureau of Consumer Protection, Federal Trade Commission,** October, 1985 - July, 1986.  Jointly with the acting Bureau Director, managed the Bureau's staff of 145 lawyers.  Primary responsibility for:

- Law enforcement activities involving consumer credit, marketing practices, and energy advertising.
- Rulemaking activities, including new rulemaking proposals and reviews of existing rules.
- Management of consumer protection activities in 10 FTC Regional Offices.
- Joint responsibility for allocating the Bureau's $12.5 million budget among various programs as a means of achieving objectives.

**Assistant to the Director, Bureau of Consumer Protection, Federal Trade Commission,** November, 1981 - August, 1983.  As the first Economist to work in this capacity, reviewed staff recommendations on cases and rules to ensure sound economic and legal reasoning and consistency with policy objectives.  Special projects and accomplishments included:

- Received the Commission's **Award for Excellence** for integrating economics into consumer protection law enforcement.
- Assisted in review of the definition of deceptive acts or practices, including proposed statutory definition and Commission Policy Statement.
- Primary responsibility for supervising review of the Commission's advertising substantiation doctrine.
- Assisted in developing evidentiary standards for review of Commission rulemakings, and applied the standards to rulemakings involving food advertising and creditors' contractual remedies.

**Economist, Bureau of Economics, Federal Trade Commission,** September, 1977 - November, 1981.  Served as expert consultant to the Commission's operating bureaus, and offered independent policy advice to the Commission.  Specialized in consumer protection problems, particularly those involving the economics of information and advertising.

- The only staff economist involved in rulemakings on food advertising, over the counter drug advertising, and children's advertising.
- Wrote sections for policy review sessions on consumer information remedies and policy toward the media.
- Designed major empirical studies of lawyer advertising and the effects of state restrictions on generic drug substitution.

**1974 - 1976:**  Part time teaching assistant in economics at the University of Chicago, Assistant Debate Coach at Northwestern University, and consultant in a private antitrust suit.

**April - September, 1973:**  Economic Analyst, American Trucking Associations, Inc., Washington, D.C.  Evaluated ATA position on deregulation of trucking.

April 27, 2021

J. Howard Beales, III  Curriculum Vitae  Page 4

## PUBLICATIONS

Textbook

*Business & Government Relations:  An Economic Perspective* (Second Edition, Kendall Hunt Publishing, 2012).

*Business & Government Relations:  An Economic Perspective* (Kendall Hunt Publishing, 2009).

Major Articles

Taskforce on Federal Consumer Financial Law Report, with Todd J. Zywicki, Thomas A. Durkin,, William C. MacLeod, and L. Jean Noonan, Consumer Financial Protection Bureau, January, 2021.

Section 13(b) of the FTC Act at the Supreme Court:  The Middle Ground, with Benjamin M. Mundel and Timothy J. Muris, The Antitrust Source, December, 2020.

"The Obama FTC Departed from Its Predecessors to the Detriment of Consumers," with Timothy J. Muris, Antitrust, Vol. 31, No. 3, pp. 124-138 (Summer 2017).

"Behavioral Economics and Credit Regulation," Journal of Law, Economics & Policy, Vol. 11, No. 3, pp. 349-365 (2015).

"FTC Consumer Protection at 100:  1970s Redux or Protecting Markets to Protect Consumers," with Timothy J. Muris, George Washington University Law Review, Vol. 83, No. 6, pp. 2157-2229 (2015).

"The FTC at 100:  The Need for Improvement in Advertising and Privacy Regulation," Antitrust Chronicle, Vol. 5 No. 1, Spring, 2014 (online publication).

"Rationality, Revolving, and Rewards:  An Analysis of Revolving Behavior on New Credit Cards," with Lacey L. Plache, Supreme Court Economic Review, Vol. 21, No. 1, pp. 133-156 (2014).

"In Defense of the Pfizer Factors," with Timothy J. Muris and Robert Pitofsky, in *The Regulatory Revolution at the FTC:  A 30-Year Perspective on Competition and Consumer Protection*, James C. Cooper, Ed. (Oxford University Press, 2013), pp. 83-108.

"Striking the Proper Balance:  Redress Under Section 13(b) of the FTC Act," with Timothy J. Muris,  Antitrust Law Journal, Vol. 79, pp. 1-43 (2013).

"Does Advertising on Television Cause Childhood Obesity?  A Longitudinal Analysis," with Robert Kulick,  Journal of Public Policy and Marketing, Vol. 32, No.2, pp. 185-194 (2013).

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 5

 "Health Related Claims, the Market for Information, and the First Amendment," Health Matrix:  Journal of Law-Medicine, Vol. 21, No. 1, pp. 7-31 (2011).

"Consumer Protection and Behavioral Economics:  To BE or not to BE?"  Competition Policy International, Spring, 2008, Vol. 4, No. 1 pp. 149-168.

"Choice or Consequences:  Protecting Privacy in Commercial Information," with Timothy J. Muris, University of Chicago Law Review, Winter, 2008, Vol. 75, No. 1, pp. 109-135.

"Brightening the Lines: The Use of Policy Statements at the Federal Trade Commission," Antitrust Law Journal, 2005, Vol. 72, No. 3, pp. 1057-1074.

"Advertising to Kids and the FTC:  A Regulatory Retrospective That Advises the Present," George Mason Law Review, Summer, 2004, Vol. 12, No. 4, p. 873-894.

"Remarks before the 2003 Symposium on the Patriot Act, Consumer Privacy, and Cybercrime," North Carolina Journal of Law and Technology, Fall, 2003, Vol. 5, No. 1, pp. 1-31.

"The FTC's Use of Unfairness Authority: Its Rise, Fall, and Resurrection," Journal of Public Policy and Marketing, Fall, 2003, Vol. 22, No. 2, pp. 192-200.

"Modification and Consumer Information:  Modern Biotechnology and the Regulation of Information," Food and Drug Law Journal, 2000, Vol. 55, No. 1, pp. 105-117.

"Licensing and Certification Systems," in The New Palgrave Dictionary of Economics and the Law, Peter Newman, ed. London: Macmillan Reference; New York, NY: Stockton Press, 1998.

"Marketing Pharmaceuticals:  New Uses for Old Drugs," in Robert Helms, Ed., Competitive Strategies in the Pharmaceutical Industry, Washington:  American Enterprise Institute Press, 1996, pp. 281-305.

"Assessments of Pharmaceutical Advertisements:  A Critical Analysis of the Criticism," with William C. MacLeod, Food and Drug Law Journal, 1995, Vol. 50, No. 3, pp. 415-449.

"Regulatory Consistency and Common Sense:  FTC Policy Toward Food Advertising Under Revised Labeling Regulations," Journal of Public Policy and Marketing, Spring, 1995, Vol. 14, No. 1, pp. 154-163.

"The Foundations of Franchise Regulation:  Issues and Evidence," with Timothy J. Muris, Journal of Corporate Finance:  Contracting, Organization, and Governance, 1995, Vol. 2, pp. 157-197.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 6

"Economic Analysis and the Regulation of Pharmaceutical Advertising," <u>Seton Hall Law Review</u>, 1994, vol. 24, No. 3, pp. 1370-1398.

"State and Federal Regulation of National Advertising," with Timothy J. Muris (Washington:  American Enterprise Institute, 1993).

"What State Regulators Should Learn from Federal Experience in Regulating Advertising," <u>Journal of Public Policy & Marketing</u>, Spring, 1991, Vol. 10, No. 1, pp. 101-117.

"Information, Competition, and Health:  Regulatory Standards for Health Messages," with Timothy J. Muris, in <u>America's Foods Health Messages and Claims:  Scientific, Regulatory and Legal Issues</u>, J.E. Tillotson, ed. (CRC Press, 1993).

"The Efficient Regulation of Consumer Information," with S. Salop and R. Craswell, <u>Journal of Law and Economics</u>, December, 1981, pp. 481-539.

"A Framework for Evaluating Consumer Protection Regulation," with R. Staelin, M. Mazis, and S. Salop, <u>Journal of Marketing</u>, Winter, 1981, pp. 11-21.

"Consumer Search and Public Policy," with R. Staelin, M. Mazis, and S. Salop, <u>Journal of Consumer Research</u>, June, 1981, pp. 11-22.

"Information Remedies for Consumer Protection," with S. Salop and R. Craswell, <u>American Economic Review</u>, May, 1981, pp. 410-413.

"Benefits and Costs of Label Information Programs," <u>Banbury Report 6:  Product Labeling and Health Risks</u>, 1980, pp. 243-60.

"Selling Consumer Information," with S. Salop, <u>Advances in Consumer Research</u>, J. Olson, ed., Vol. VII, Association for Consumer Research, 1980, pp. 238-40.

"The Economics of Regulating the Professions," in <u>Regulating the Professions</u>, R. Blair and S. Rubin, eds., Lexington Books, 1980, pp. 125-142.

<u>Other Publications</u>

"Privacy and Consumer Control," in Internet, Big Data &Algorithms: Gateway to a New Future or a Threat to Privacy and Freedom, with Timothy J. Muris, May, 2019, Aspen Institute Congressional Program.

"Public Goods, Private Information:  Providing an Interesting Internet," Competition Policy International, Antitrust Chronicle (Online, April, 2019), available at https://www.competitionpolicyinternational.com/public-goods-private-information-providing-an-interesting-internet/.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 7

Public Comment on FTC Hearings on Competition and Consumer Protection in the 21st Century, on behalf of U.S. Chamber Institute for Legal Reform, with Timothy J. Muris, Alan Charles Raul, Kate Heinzelman, Gabrielle Whitehall, December 21, 2018, available at https://www.ftc.gov/system/files/documents/public_comments/2018/12/ftc-2018-0098-d-0037-163376.pdf.

Public Comment on NHTSA's Federal Automated Vehicles Policy: Accelerating the Next Revolution in Roadway Safety, with Sofie E. Miller and Daniel R. Perez, November 16, 2016, available at https://regulatorystudies.columbian.gwu.edu/public-comment-nhtsa%E2%80%99s-federal-automated-vehicles-policy-accelerating-next-revolution-roadway-safety.

"BIAS at the FCC," Commentary, George Washington Regulatory Studies Center, June 6, 2016, available at https://regulatorystudies.columbian.gwu.edu/bias-fcc.

"Small-Dollar Installment Loans:  An Empirical Analysis," with Anand M. Goel (Navigant Economics, March 2, 2015) (available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2581667.).

"An Empirical Analysis of the Value of Information Sharing in the Market for Online Content," with Jeffrey A. Eisenach, published online by Digital Advertising Alliance, available at http://www.aboutads.info/resource/fullvalueinfostudy.pdf, January, 2014.

"Putting Consumers First: A Functionality-Based Approach to Online Privacy," with Jeffrey A. Eisenach, (January 1, 2013). Available at SSRN: http://ssrn.com/abstract=2211540 or http://dx.doi.org/10.2139/ssrn.2211540.

"Television Advertising and Childhood Obesity," published online by Grocery Manufacturers Association, available at http://www.gmaonline.org/publicpolicy/docs/obesity/Beales%20Review%20of%20Recent%20Studies.pdf, October, 2010.

"The Value of Behavioral Targeting," published online by Network Advertising Initiative, available at http://www.networkadvertising.org/pdfs/Beales_NAI_Study.pdf, March, 2010.

"Modern Biotechnology and the Regulation of Information," Update: Food and Drug Law, Regulation, and Education, October, 2000, p. 10.

"Advertising is Less Powerful but More Important than Critics Believe," Book Review of Fear of Persuasion:  A New Perspective on Advertising and Regulation, by John E. Calfee, in Commercial Speech Digest, Spring 1998, pp. 6-7.

"On the Eighth Day," Book review of Policy Controversy in Biotechnology:  An Insider's View, by Henry I Miller, M.D., in Regulation, Winter 1997, pp. 50-51.

J. Howard Beales, III                Curriculum Vitae                Page 8

"Is there and FDA in your Future?"  Medical Marketing and Media, June, 1995, Vol. 30, No. 6, pp. 34-47.  (Roundtable discussion).

"Teenage Smoking:  Fact and Fiction," The American Enterprise, March/April, 1994, p. 20.

Book Review of Richard T. Kaplar, ed., Bad Prescription for the First Amendment, in Journal of Public Policy and Marketing, Vol. 12, pp. 288-289, Fall, 1993.

"Congressional Confusion on Labeling and Advertising Could Deny Consumer Information and Free Speech," with Timothy J. Muris, Washington Legal Foundation Legal Opinion Letter, 1991.

"The Limits of Unfairness Under the Federal Trade Commission Act," with T. Muris (Association of National Advertisers, 1991).

"The Federal Trade Commission in the 1980s," in Marketing and Advertising Regulation: The Federal Trade Commission in the 1990s, P. Murphy and W. Wilkie, eds., University of Notre Dame, 1990, pp. 154-163.

"Dying For Drugs," Regulation:  AEI Journal on Government and Society, December, 1988, pp. 9-11 (unsigned contributed editorial).

"Agency Focuses on the Most Harmful [food advertising] Claims," Los Angeles Times, October 27, 1986, p. V3.

"Comment" (on two advertising substantiation papers), in Empirical Approaches to Consumer Protection Economics, P. Ippolito and D. Scheffman, eds., Federal Trade Commission, March, 1986.

"Advertising Substantiation Program," with C. Guerard, E. Popper, D. Cheek, P. Skidmore, Report to the Federal Trade Commission, 1984.

Congressional Testimony

The Consumer Protection and Recovery Act: Returning Money to Defrauded Consumers,  Subcommittee on Consumer Protection and Commerce, Committee on Energy and Commerce, United States House of Representatives, April 27, 2021.

Understanding the Digital Advertising Ecosystem, Subcommittee on Digital Commerce and Consumer Protection, Committee on Energy and Commerce, United States House of Representatives, June 14, 2018.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                         Page 9

An Overview of the Credit Reporting System, Subcommittee on Financial Institutions and Consumer Credit, Committee on Financial Services, United States House of Representatives, September 10, 2014.

The FTC at 100:  Views from the Academic Experts, Subcommittee on Commerce, Manufacturing, and Trade, Committee on Energy and Commerce, United States House of Representatives, February 28, 2014.

Credit Reports:  What Accuracy and Errors Mean for Consumers, Subcommittee on Consumer Protection, Senate Committee On Commerce, Science, and Transportation, May 7, 2013

Legislative Hearing on H.R. 6149, the "Precious Coins and Bullion Disclosure Act," Subcommittee on Commerce, Trade and Consumer Protection, Committee on Energy and Commerce, United States House of Representatives , September 23, 2010.

Examining the Need for H.R. 2885, The Credit Monitoring Clarification Act, Committee on Financial Services, United States House of Representatives, May 20, 2008.

Peer-To-Peer ("P2P") File-Sharing Technology, Subcommittee on Competition, Infrastructure, and Foreign Commerce of the Committee on Commerce, Science, and Transportation, United States Senate, June 23, 2004.

Information Security -- Challenges for Businesses and Consumers, Subcommittee on Technology, Information Policy, Intergovernmental Relations, and The Census of the Committee On Government Reform, United States House of Representatives, June 16, 2004.

Efforts to Ensure the Truthfulness and Accuracy of the Marketing of Dietary Supplements for Children, Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce, United States House of Representatives, June 16, 2004.

Identity Theft and Social Security Numbers, Subcommittee On Social Security of the Committee On Ways and Means, United States House of Representatives, June 15, 2004.

Hearing on Online Pornography: Closing the Door on Pervasive Smut, Subcommittee On Commerce, Trade, and Consumer Protection of the Committee on Energy and Commerce, United States House of Representatives, May 6, 2004.

Spyware, Subcommittee On Commerce, Trade, and Consumer Protection of the Committee on Energy and Commerce, United States House of Representatives, April 29, 2004.

Efforts to Fight Fraud on the Internet, Special Committee On Aging, United States Senate, March 23, 2004.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 10

Efforts to Combat Unfair and Deceptive Subprime Lending, Special Committee on Aging, U.S. Senate, February 24, 2004.

Consumer Protection Issues in the Credit Counseling Industry, Subcommittee on Oversight, Committee on Ways and Means, U.S. House of Representatives, November 20, 2003.

Unsolicited Commercial Email, Subcommittee on Regulatory Reform and Oversight, Committee on Small Business, U.S. House of Representatives, October 30, 2003.

Contact Lens Legislation, Committee on Energy and Commerce, U.S. House of Representatives, September 9, 2003.

Issues Relating to Ephedra Containing Dietary Supplements, Subcommittee on Oversight and Investigations, and the Subcommittee on Commerce, Trade, and Consumer Protection, . House of Representatives, July 24, 2003.

Unsolicited Commercial Email, Subcommittee on Commerce, Trade and Consumer protection and the Subcommittee on Telecommunications and the Internet, Committee on Energy and Commerce, U.S. House of Representatives, July 9, 2003.

Identity Theft: Prevention and Victim Assistance, Financial Institutions and Consumer Credit Subcommittee, Financial Services Committee, U.S. House of Representatives, June 24, 2003.

Identity Theft: Prevention and Victim Assistance, Committee on Banking, Housing, and Urban Affairs, U.S. Senate, June 19, 2003.

Fair Credit Reporting Act, Financial Institutions and Consumer Credit Subcommittee, Financial Services Committee, U.S. House of Representatives, June 4, 2003.

Fair Credit Reporting Act, Committee on Banking, Housing, and Urban Affairs, U.S. Senate, May 15, 2003.

Identity Theft, Financial Services Committee, U.S. House of Representatives, April 3, 2003.

Internet Sales of Prescription Drugs, Committee on Government Reform, U.S. House of Representatives, March 27, 2003.

Marketing of Dietary Supplements, Subcommittee on Oversight of Government Management, Restructuring and the District of Columbia, Committee on Governmental Affairs, U.S. Senate, October 18, 2002.

Senior Identity Theft, Special Committee on Aging, U.S. Senate, July 18, 2002.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 11

Identity Theft Penalty Enhancement Act of 2002, Subcommittee on Technology, Terrorism, and Government Information, Judiciary Committee, U.S. Senate, July 9, 2002.

The Franchise Rule, Subcommittee on Commerce, Trade, and Consumer Protection, Committee on Energy and Commerce, U.S. House of Representatives, June 25, 2002.

The Sports Agent Responsibility and Trust Act, H.R. 4701, Subcommittee on Commerce, Trade, and Consumer Protection, Committee on Energy and Commerce, U.S. House of Representatives, June 5, 2002.

The Integrity and Accuracy of the WHOIS Database, Subcommittee on Courts, the Internet and Intellectual Property, Committee on the Judiciary, U.S. House of Representatives, May 22, 2002.

Identity Theft, Subcommittee on Technology, Terrorism, and Government Information, Judiciary Committee, U.S. Senate, March 20, 2002.

Charitable Solicitation Fraud, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce, U.S. House of Representatives, November 6, 2001.

Dietary Supplement Fraud, Special Committee on Aging, U.S. Senate, September 10, 2001.

Rent-to-Own, Financial Services Committee, U.S. House of Representatives, July 12, 2001.

Teenage smoking, Subcommittee on Health and Environment, Committee on Commerce, U.S. House of Representatives, December 9, 1997.

Lectures and Presentations

"Policy Issues Relating to the Abusive standard under Dodd-Frank," Consumer Financial Protection Bureau Symposium on Abusive Acts or Practices, June 25, 2019.

"Economics of Commercial Data Regulation," George Mason Law and Economics Center, Workshop for Attorneys General and Regulators on the Economics of Information, Advertising, and Privacy, May 12, 2019.

"Economics of Advertising," George Mason Law and Economics Center, Workshop for Attorneys General and Regulators on the Economics of Information, Advertising, and Privacy, May 12, 2019.

"Competition and Consumer Protection Issues in Online Advertising," FTC Hearings on Competition and Consumer Protection in the 21st Century, November 7, 2018.

April 27, 2021

J. Howard Beales, III                Curriculum Vitae                Page 12

"The Regulation of Consumer Data," FTC Hearings on Competition and Consumer Protection in the 21st Century, September 13, 2018.

"Economics of Commercial Data Regulation," George Mason Law and Economics Center, Workshop for Attorneys General and Regulators on the Economics of Information, Advertising, and Privacy, May 31, 2018.

"Economics of Advertising," George Mason Law and Economics Center, Workshop for Attorneys General and Regulators on the Economics of Information, Advertising, and Privacy, May 31, 2018.

"Lessons in Liability:  The US Privacy Landscape and Proposals for Reform," IAPP Global Privacy Summit, April 2017.

"Wrap Up Panel," Federal Trade Commission PrivacyCon 2017, Washington, DC, January 12, 2017.

"The Value of Advertiser-supported Online Content," Digital Advertising Alliance Summit 2016, Los Angeles, CA, May, 2016.

"Monetary Remedies in FTC Consumer Protection Actions," American Bar Association, Antitrust Law Section, Spring Meeting, Washington DC, April 6, 2016.

Discussant, Research Roundtable for Privacy Fellows, George Mason Law and Economics Center, Arlington, VA, December 2015.

"Nomi, Spokeo, and Privacy Harms," George Mason Law and Economics Center Public Policy Briefing, Arlington, VA, November 2015.

Moderator, Economics of Data Breach Regulation, Public Policy Conference on Privacy and Data Security, George Mason Law and Economics Center, Arlington, VA, June 2015.

"Advertising Substantiation," American Bar Association, Antitrust Law Section, Consumer Protection Conference, Washington DC, February 12, 2015.

"Behavioral Economics and Credit Regulation," George Mason University, Arlington, VA, November 14, 2014.

"The Law and Economics of Consumer Protection," George Mason University, Arlington, VA, October 23, 2014.

"Where is the FTC Heading On Digital Consumer Protection," Tech Freedom Conference, Washington, DC, July 31, 2014.

April 27, 2021

J. Howard Beales, III                  Curriculum Vitae                  Page 13

"The Value of Information Sharing," Digital Advertising Alliance, San Francisco, CA, June 26, 2014.

"The FTC's Proper Role in Privacy and Data Security Regulation," George Mason Law and Economics Center Conference on the Future of Privacy and Data Security Regulation," Arlington, VA, May 14, 2014.

"Behavioral Economics," George Mason Law and Economics Center, Arlington, VA, May 2, 2014.

"The FTC at 100," Association of National Advertisers, Washington, DC, April 23, 2014.

"The Internet of Things," American Bar Association, Business Law Section, Washington, DC, March 26, 2014

"The Regulatory Environment," Federal Reserve Bank of Philadelphia, Conference on "Small-Dollar Credit:  Products, Economics, and Regulation," Philadelphia, Pa., July 11-12, 2013.

"The Economics of Relevant Advertising:  Preserving the Consumer Value from the Ad-Supported Internet," Digital Advertising Alliance Summit, Washington, DC, June 5, 2013.

"The Consumer Finance Market as a Reflection of Growing Income Disparity in America:  The Social Benefits and Costs," American Bar Association, Business Law Section, Washington, DC, April 5, 2013.

"Current Issues in Advertising Regulation," American Bar Association, Antitrust Law Section, Consumer Protection Conference, Washington, DC, February 7, 2013.

"Protecting Consumers, Protecting Privacy:  Addressing Privacy Issues as "Unfair or Deceptive Acts or Practices," George Mason Law and Economics Center Conference on the Law & Economics of Privacy and Data Security, Arlington, VA, December 13, 2012.

"Benefits and Risks of Comprehensive Data Collection," FTC Workshop on The Big Picture:  Comprehensive Online Data Collection, Washington, DC, December 6, 2012.

"Product Selection:  Unfair, Deceptive, and Abusive Practices," Conference on Consumer Financial Protection Regulations:  How Well do they Measure Up?, Federal Reserve Bank of Philadelphia, Payment Card Center, Philadelphia, PA, September 14, 2012.

"Consumer Protection and the Financial Crisis," Experian Legal Conference, Blufton, SC, March 20, 2012.

 "The FTC and the CFPB," American Bar Association, Antitrust Law Section, Fall Forum, Washington, DC, November, 2011.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 14

"In Defense of the Pfizer Factors," with Timothy J. Muris and Robert Pitofsky, George Mason University Law and Economics Center, Arlington, VA, September, 2011.

"Privacy Regulation in the U.S. and Europe," Google Legal Summit, Los Angeles, CA, September, 2011.

"The Impact of the Interagency Working Group's Proposed Restrictions on Advertising," U.S. Chamber of Commerce Regulatory Affairs Committee, Washington, DC, June, 2011.

"The Value of Behavioral Targeting," American Marketing Association, Marketing and Public Policy Conference, Washington, DC, June, 2011.

"A New Era for the FTC Advertising Substantiation Standards?" American Bar Association, Antitrust Law Section, Spring Meetings, Washington, DC, April, 2011.

"FTC Preliminary Privacy Report: Key Takeaways for Business," International Association of Privacy Professionals, Global Privacy Summit, Washington, DC, March, 2011.

"Substantiation:  Is the FTC Changing the Rules?  Will The Courts Go Along?" American Bar Association, Antitrust Law Section, Consumer Protection Conference, Washington, DC, February, 2011.

"Regulating Online Advertising: What Will it Mean for Consumers, Culture & Journalism?" Progress & Freedom Foundation Capitol Hill Briefing, Washington, DC, July, 2009.

"The Bureau Director's Roundtable," American Bar Association, Antitrust Law Section, Consumer Protection Conference, Washington, DC, June, 2009.

"A Two Decade Perspective on Changing FTC Priorities, Initiatives, and Impact," American Marketing Association Marketing and Public Policy Conference, Washington, DC. May, 2009.

"Public Goods, Private Information, and Anonymous Transactions: Providing a Safe and Interesting Internet,"   George Mason University/Microsoft Conference on the Law and Economics of Innovation, Arlington, Virginia, May, 2009.

"Historical Perspectives on Privacy in the United States," Data Privacy in Transatlantic Perspective: Conflict or Cooperation? Durham, North Carolina, January, 2008.

"Media and Public Policy," Future of Children Conference, Princeton, New Jersey, April, 2007.

"Regulating Through Consent Decrees,"   American Bar Association, Business Law Section, Frederic Fisher Memorial Program, Washington, DC, March, 2007.

April 27, 2021

J. Howard Beales, III        Curriculum Vitae        Page 15

  "The Bureau Director's Perspective," American Bar Association, Antitrust Law Section, Consumer Protection Conference, Washington, District DC, January, 2007.

    "Privacy Law: Enough Already!" American Bar Association, Antitrust Law Section, Washington, DC, October, 2006.

    Numerous speeches to trade groups, consumer groups, and others while Director of the Bureau of Consumer Protection, 2001-2004.

    "Off Label Uses of Prescription Drugs," Conference on Marketing and Public Policy, sponsored by American Marketing Association, May 17-18, 1996, Washington, D.C.

    Discussant at Conference on Marketing and Public Policy, sponsored by American Marketing Association, May 19-20, 1995, Atlanta, Ga.

    "What Happens After Approval?  Regulatory Policy and the Flow of Information," American Enterprise Institute Conference on Reforming the Food and Drug Administration:  The Pharmaceutical Approval Process," March 10, 1995, Washington, D.C.

    "State Regulation of Franchise Contracts," with Timothy J. Muris, George Maxon University School of Law Faculty Workshop Series, November, 1994.

    "Regulating the Franchise Relationship:  Issues and Evidence," with Timothy J. Muris, Conference on Franchise Contracting, Organization, and Regulation, Michigan Business School, May 26-27, 1994.

    Discussant at Conference on Marketing and Public Policy, sponsored by American Marketing Association, May 13-14, 1994, Washington, D.C.

    "The Impact of Information in the Marketplace:  Promoting New Uses for Old Drugs," Southern Economic Association, New Orleans, La., November 21-23, 1993.

    "Regulating Pharmaceutical Advertising," Symposium, The Pharmaceutical Industry: Surviving Reform, Regulation, and Litigation," Seton Hall University School of Law, Newark, N. J., November 16, 1993.

    Discussant at Conference on Marketing and Public Policy, sponsored by American Marketing Association, May 17-18, 1992, Washington, D.C.

    "Marketing Pharmaceuticals:  New Uses for Old Drugs," Conference on Competitive Strategies in the Pharmaceutical Industry, American Enterprise Institute, Washington, Oct. 27-28, 1993.

    "Civil Penalties and Organizational Sanctions," Lecture at the Commodity Futures Trading Commission, Washington, D.C., January 30, 1992.

April 27, 2021

J. Howard Beales, III                    Curriculum Vitae                    Page 16

"The Economics of Information," Lecture at the Commodity Futures Trading Commission, Washington, D.C., October 14, 1991.

"Economic Analysis and the Regulatory Process," American Society of Association Executives, Washington, D.C., November 18, 1990.

Participant in Foresight Seminars on Pharmaceutical Research, Economic Issues in Genetic Screening, Washington, D.C., September, 1988.

Discussant at the Association for Consumer Research, Boston, Mass., October, 1987.

Food and Drug Law Institute, Seminar on Health Claims for Foods, Washington, D.C., September, 1987.

American Marketing Association Doctoral Consortium, Duke University, August, 1985.

Georgetown University Law Center for Continuing Legal Education, February, 1985.

Practicing Law Institute, Washington, December, 1984.

Unpublished Papers

"Public Comment on NHTSA's Federal Automated Vehicles Policy:  Accelerating the Next Revolution in Roadway Safety," with Sofie E. Miller and Daniel R. Perez, George Washington Regulatory Studies Center, November 16, 2016, available at https://regulatorystudies.columbian.gwu.edu/public-comment-nhtsa%E2%80%99s-federal-automated-vehicles-policy-accelerating-next-revolution-roadway-safety.

"Comment on Putting Disclosure to the Test," FTC Workshop Putting Disclosure to the Test, October 30, 2016.

"Public Comment on Protecting the Privacy of Customers of Broadband and Other Telecommunications Services," George Washington Regulatory Studies Center, May 27, 2016, available at https://regulatorystudies.columbian.gwu.edu/public-comment-protecting-privacy-customers-broadband-and-other-telecommunications-services.

Artie's Auto Body, Inc. v. The Hartford Fire Insurance Company, SC 19219, Amicus brief, Supreme Court of the State of Connecticut, with Timothy J. Muris, January 4, 2014.

POM Wonderful, LLC, v. Federal Trade Commission, Brief of Amici Curiae Consumer Healthcare Products Association and Council for Responsible Nutrition, U.S. Court of Appeals for the D.C. Circuit, August 21, 2013, with Timothy J. Muris

"Putting Consumers First:  A Functionality-Based Approach to Online Privacy," with Jeffery A. Eisenach, http://ssrn.com/abstract=2211540, January 1, 2013.

April 27, 2021

J. Howard Beales, III                Curriculum Vitae                Page 17

"Consumer Welfare Implications of Regulating Rent-to-Own Transactions," with Jeffrey A. Eisenach and Robert E. Litan, http://ssrn.com/abstract=2060984, May 16, 2012.

 "Short-Term Consumer Credit:  Literature Review," October 2011.

"Associations between Screen Media and Language Development in Infants," with Elizabeth Vandewater (2010).

"Market Oriented Consumer Protection," (2009).

"Advertising and Teenage Smoking Behavior," November, 2000.

Public Interest comment on FDA's proposed rule regarding nutrition labeling of trans fatty acids, submitted by the Regulatory Studies Program, Mercatus Center, George Mason University, April, 2000.

"The Inefficiency of State Regulation of Franchise Contracts," with Timothy J. Muris, (1998).

"The Health Consequences of Decisions About Drugs," August, 1996.

"Regulating the Franchise Relationship:  Issues and Evidence," with Timothy J. Muris, (1994).

"The Determinants of Teenage Smoking Behavior," Working Paper 96-34, School of Business and Public Management, The George Washington University (1996).

"Marketing Information and Pharmaceuticals: New Uses for Old Drugs,"  Working Paper No. 2, Department of Strategic Management and Public Policy, The George Washington University (1993).

"Advertising and the Determinants of Teenage Smoking Behavior,"  Working Paper No. 1, Department of Strategic Management and Public Policy, The George Washington University (1993).

"Television Program Quality and Restrictions on the Number of Commercials," presented at the Eighth Annual Conference on Telecommunications Policy Research, April, 1980 (Bureau of Economics Working Paper Number 30, June, 1980).

"Disseminating Defect Information," with E. Golding, October, 1980.

"Economic Effects of Standards and Disclosures," February, 1979.

"An Analysis of Exposure to Non-Network Television Advertising," Testimony submitted to the FTC, Hearings on Children's Advertising Rulemaking, November, 1978.

April 27, 2021

J. Howard Beales, III                  Curriculum Vitae                  Page 18

"The Gains and Losses from Industrial Concentration Revisited," July, 1978.

"The Distribution of Advertising Within an Industry," Ph.D. Dissertation, The University of Chicago, June, 1978.

"A Simple Model of Industry Adjustment to a Cost Saving Innovation," February, 1978.

<u>Other Professional Activities</u>

Member, Regulatory Transparency Project, Working Group on Regulatory Process, The Federalist Society, 2016 – present.

Member, Data Protection and Integrity Advisory Committee, Department of Homeland Security, 2004 – 2014; Chairman, 2006 - 2009.

Member, Institute of Medicine Committee on Food Marketing and the Diets of Children and Youth, 2004 - 2006.

Consultant for Facebook, Walt Disney Company, Pepsico, American Express, Visa, Exxon Mobil, America Online, Primerica, Mortgage Insurance Companies of America, Federated Department Stores, Ford Motor Co., General Mills, Grocery Manufacturers of America, R. J. Reynolds, and others.

Ad Hoc referee for the <u>Journal of Public Policy and Marketing.</u>

 Reviewer for papers for American Marketing Association's Marketing and Public Policy Conference, 1992-1996.

Referee for Bureau of Economics Staff Report on comparative price advertising.

Textbook Reviewer for McGraw Hill (1997).

April 27, 2021

## Prior Testimony via Trial Testimony or Deposition

Euro-Pro Operating LLC v. Dyson, Inc., and Dyson Ltd., U.S. District Court, Massachusetts, Case No. 1:14-cv-13720, Rebuttal Expert Report Dated January 29, 2016, Deposition, February 24, 2016.

State of Oregon v. Living Essentials, LLC, and Innovation Ventures, LLC, Circuit Court of the State of Oregon for Multnomah County, Case No. 14-cv-09149, Testimony July 19, 2016.

CFPB vs. CashCall, Inc., U.S. District Court, Central District of California, Case No. 2:15-cv-07522-JFW (RAOx), Expert Report Dated May 27, 2016, Deposition July 22, 2016.

State of Washington v. Living Essentials, LLC et al., King County Superior Court, No. 14-2-19684-9, Report dated January 22, 2016, Deposition March 28, 2016, Testimony September 7, 2016.

Federal Trade Commission v. DIRECTV, U.S. District Court, Norther District of California, Case No. 3:15-cv-01129 HSG, Report dated September 16, 2016, Depositions October 25, 2016; December 16, 2016.

State of Colorado v. Center for Excellence in Higher Education, Inc. et al., District Court, City and County of Denver, Case No. 2014cv34530, Expert Report dated August 4, 2017, Deposition, August 21, 2017, Trial Testimony November 1, 2017.

State of Vermont v. Living Essentials, LLC, State of Vermont Superior Court, Washington Unit Case No. 443-7-14 wMCV, Deposition July 26, 2018.

In Re:  Think Finance, LLC, et al., Debtors, United States Bankruptcy Court for the Northern District of Texas, Dallas Division, No. 17-33964 (HDH),  Expert Report dated August 13, 2018; Deposition September 20, 2018.

Lula Williams et al. vs. Big Picture Loans, LLC, et al., U.S. District Court, Eastern District of Virginia, Richmond Division, Civil Action No. 3:17-cv-461 (REP), Expert Report dated January 11, 2019, Deposition March 28, 2019.

PNC Bank, N.A. v. Trilegiant Corporation et al., Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, G.D. 15-020824.  Expert Report dated April 26, 2019, Deposition May 14, 2019.

State of Hawaii v. Living Essentials, LLC, et al., Circuit Court of the First Circuit, Civil No. 15-1-0142-01 (DEO).  Expert Report dated June 27, 2019, Deposition October 17, 2019.

Justin Lytle and Christine Musthaler v. Nutramax Laboratories, Inc. and Nutramax
Laboratories Veterinary Sciences, Inc. U.S. District Court, Central District of California,
Case No. 5:19-cv-00835-FMO-SP.  Expert Report dated February 25, 2021, Deposition
May 19, 2021.

Brian Smith and Michael Ilardo vs. LifeVantage Corporation, U.S. District Court, District
of Utah, Central Division, Case No: 2:18-cv-00621-DBB-JCB.  Expert Report dated April
30, 2021, Deposition May 21, 2021.

EXHIBIT 2 – Documents Relied Upon

| Document | Citation | Date |
|---|---|---|
| *Policy Statement Regarding Advertising Substantiation and Policy Statement on Deception*, Federal Trade Commission | FTC, *Policy Statement Regarding Advertising Substantiation* (1983), appended to Thompson Med. Co., Inc., 104 F.T.C. 648 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987); FTC, *Policy Statement on Deception* (1983), appended to *Cliffdale Assoc., Inc.*, 103 F.T.C. 110 (1984). | |
| *First Amended Complaint*, Federal Trade Commission and Utah Division of Consumer Protection vs. Nudge, LLC and Response Marketing Group, LLC | ECF No. 173 | Filed November 18, 2020 |
| *Investigational Hearing Testimony*, Richard J. Ruby | FTC-PI 4342.001–4343.024 Tab 16, cited in TRO Motion | June 19, 2018 |
| *Deposition*, Richard J. Ruby | Deposition | December 9, 2020 |

| Training Type | Course | Date | Media Type | File Name | Bates Number |
|---|---|---|---|---|---|
| Preview Event | Sandy Springs, Georgia | September 9, 2020 | Transcript | F191028-ATL-5P | Nudge.0000017810 |
| Preview Event | Sandy Springs, Georgia | | Document | Event Guide | Response.FTC.00008941 |
| Preview Event | Twin Falls, Idaho taught by Steve Johnson | August 31, 2017 | Transcript | FTC-00242917 | FTC-00242917 |