### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

FEDERAL TRADE COMMISSION and UTAH DIVISION OF CONSUMER PROTECTION,

    Plaintiffs,

       v.

NUDGE, LLC, a Utah limited liability company, *et al.*,

    Defendants.

Case No. 2:19-cv-867-DBB-DAO

Judge David B. Barlow

Magistrate Judge Daphne A. Oberg

**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF AS TO DEFENDANTS NUDGE, LLC; RESPONSE MARKETING GROUP, LLC; BUYPD, LLC; BRANDON B. LEWIS; RYAN C. POELMAN; PHILLIP W. SMITH; SHAWN L. FINNEGAN; and CLINT R. SANDERSON**

Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the Utah Division of Consumer Protection (the "Division") (collectively, "Plaintiffs"), filed their Complaint for Permanent Injunction and Other Equitable Relief, subsequently amended as the First Amended Complaint for Permanent Injunction and Other Equitable Relief, (as amended, "Complaint") for a permanent injunction, monetary relief, and other relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, the Telemarketing Sales Rule, 16 C.F.R. Part 310, the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code § 13-11-1 *et seq.*, the Business Opportunity Disclosure Act ("BODA"), Utah Code § 13-15-1 *et seq.*, and the Telephone Fraud Prevention Act ("TFPA"), Utah Code § 13-26-1 *et seq.*

1

The Plaintiffs and Defendants Nudge, LLC, Response Marketing Group, LLC, BuyPD, LLC, Brandon B. Lewis, Ryan C. Poelman, Phillip W. Smith, Shawn L. Finnegan, and Clint R. Sanderson (collectively, "Defendants") stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief as to the Defendants ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that the Defendants participated in deceptive and unlawful acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the UCSPA, Utah Code § 13-11-1 *et seq.*, the BODA, Utah Code § 13-15-1 *et seq.*, and the TFPA, Utah Code § 13-26-1 *et seq.*, in the marketing and sale of real estate training services.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, the Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **Defendants** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

   1. "**Corporate Defendants**" means Nudge, LLC, Response Marketing Group, LLC (also doing business as 3 Day Real Estate Training, Abundance Edu, LLC, Affluence Edu, LLC, American Money Tour, Cash Flow EDU, Clark EDU, LLC, Edge 2 Real Estate, Evtech Media North, Flip for Life, Flipping For Life, Income Events, Insider's Financial Education, LLC, Leading Financial Education, LLC, Onwealth, Power Flip, Prosper Live, Property Education, LLC, Renovate To Rent, Simple Real Estate Training, Smart Flip, Snap Flip, US Education Advance, Vintage Flip, Visionary Events, Wealth Tribe, Women's Empowerment, Yancey Events, Yancey, LLC, and Your Real Estate Today), and BuyPD, LLC, and their successors and assigns.

   2. "**Individual Defendants**" means Brandon B. Lewis, Ryan C. Poelman, Phillip W. Smith, Shawn L. Finnegan, and Clint R. Sanderson.

B. "**Material Connection**" means any relationship that might materially affect the weight or credibility of any representation or endorsement and that would not be reasonably expected by consumers.

C. "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

## ORDER

### I.     BAN ON WEALTH CREATION PRODUCTS AND SERVICES

IT IS ORDERED that the Defendants are permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale, of any wealth creation product or service, including any training or coaching related to: (a) real estate; (b) stocks or options; (c) other investments; or (d) online stores or work-at-home opportunities.

Provided, however, that Defendants may charge consumers for a real estate or stock software product or service that the consumer purchased before November 7, 2019 for up to twelve months from the date of the entry of this Order.

### II.    PROHIBITIONS REGARDING TELEMARKETING

IT IS FURTHER ORDERED that the Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Telemarketing of any goods or services are permanently restrained and enjoined from:

A.     misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

B.     making a false or misleading statement to induce any person to pay for goods or services; and

C.     violating any provision of the TSR, 16 C.F.R. Part 310, a copy of which is attached as **Attachment A**, and the Telephone Fraud Prevention Act ("TFPA"), Utah Code, § 13-26-1 *et seq.*, a copy of which is attached as **Attachment B**.

### III.    PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that the Defendants, the Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, or offering for sale any good or service, are permanently restrained and enjoined from making or assisting others in making any misrepresentations, expressly or by implication:

A.    That any training or coaching program is only available for a select group of consumers who have to qualify to join the program;

B.    Regarding the need or purpose for obtaining consumers' financial information;

C.    That consumers will recoup the cost of the Defendants' products and services through the provision of any product or service that any Defendant offers;

D.    That consumers will have unlimited access to mentors or advisors offered or promoted by Defendants;

E.    That mentors or advisors offered or promoted by Defendants will provide specialized expert advice tailored to consumers' specific needs;

F.    That any product or service offered or sold by Defendants is unique or not offered elsewhere;

G.    Regarding any Material Connection between the Defendants and any individual or entity offering or affiliated with a product or service;

H.    That any consumer review or endorsement is truthful or is made by an actual user of such product or service or entity;

I.    Through the use of any endorsement of a product, service, or entity; or

J.      Regarding any other fact material to consumers concerning any good or service, such as:  the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## IV.    MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of Fifteen Million Dollars ($15,000,000) is entered in favor of the Commission against Nudge, LLC, Response Marketing Group, LLC, BuyPD, LLC, Brandon B. Lewis, Ryan C. Poelman, Phillip W. Smith, Shawn L. Finnegan, and Clint R. Sanderson, jointly and severally, as monetary relief.

B.      Judgment in the amount of Fifteen Million Dollars ($15,000,000) is entered in favor of the Division against Nudge, LLC, Response Marketing Group, LLC, BuyPD, LLC, Brandon B. Lewis, Ryan C. Poelman, Phillip W. Smith, Shawn L. Finnegan, and Clint R. Sanderson, jointly and severally, as civil penalties.

C.      The Defendants are ordered to pay to the Commission Fifteen Million Dollars ($15,000,000), by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission, as follows:

1.      Five Million Dollars ($5,000,000) within 7 days of entry of this Order, which undersigned counsel shall hold in escrow as of the date the Defendants execute this Order for no purpose other than payment to the Commission;

2.      One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) within 120 days of entry of this Order;

3.      One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) within

6

240 days of entry of this Order; and

4.      Six Million Five Hundred Thousand Dollars ($6,500,000) within 540 days
        of entry of this Order.

D.      The payments specified in Sections C.2-4 above ("Deferred Payments") shall be
secured by the collateral listed in Attachment C ("Collateral"), which is owned by Building One
Lindon, LLC.  Defendants represent that one or more of the Defendants has the right and
authority to grant the Commission the security interest in the Collateral.  The terms and
conditions of the pledge agreement shall be subject to further documentation acceptable to the
Commission, including sworn statements regarding the collateral.  Defendants shall cooperate
with and take all steps necessary to perfect and protect the Commission's secured interest in the
collateral, at the Defendants' expense.

E.      Time is of the essence for the Deferred Payments.  In the event any such payment
is not made by the due date, the entire outstanding balance of the Judgment shall be immediately
due and payable to the Commission, and the Defendants consent to entry of an order in this case
appointing an equity receiver to take possession of and liquidate any collateral securing the
Deferred Payments.

F.      Upon the payment of the entire amount to the Commission set forth in Subsection
C above, the judgment in favor of the Division is suspended.

## V.  ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      The Defendants relinquish dominion and all legal and equitable right, title, and
interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in

7

any subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to

enforce the Plaintiffs' rights to any payment or monetary judgment pursuant to this Order, such

as a nondischargeability complaint in any bankruptcy case.

       C.      The facts alleged in the Complaint establish all elements necessary to sustain an

action by the Plaintiffs pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.

§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

       D.      The Defendants acknowledge that their Taxpayer Identification Numbers (Social

Security Numbers or Employer Identification Numbers), which the Defendants must submit to

the Plaintiffs, may be used for collecting and reporting on any delinquent amount arising out of

this Order, in accordance with 31 U.S.C. § 7701.

E.      All money received by the Commission pursuant to this Order may be deposited into a

fund administered by the Commission or its designee to be used for consumer relief, such as

redress and any attendant expenses for the administration of any redress fund.  If a representative

of the Commission, in consultation with the Division, decides that direct redress to consumers is

wholly or partially impracticable or money remains after redress is completed, the Commission

may apply any remaining money for such other relief (including consumer information remedies)

as it determines to be reasonably related to Defendants' practices alleged in the Complaint.

## VI.  CUSTOMER INFORMATION

       IT IS FURTHER ORDERED that the Defendants, Defendants' officers, agents,

employees, attorneys, and all other persons in active concert or participation with any of them,

who receive actual notice of this Order, whether acting directly or indirectly, are permanently

restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient customer information to enable the Plaintiffs to efficiently administer consumer redress.  If a representative of the Plaintiffs requests in writing any information related to redress, the Defendants must provide it, in the form prescribed by the Plaintiffs, within 14 days.

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that the Defendants obtained prior to entry of this Order in connection with the Defendants' marketing or sale of real estate investment training and coaching programs; and

C.      Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Plaintiffs.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent that use is consistent with Section I of this Order, requested by a government agency or required by law, regulation, or court order.

## VII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Individual Defendant for any business that such Defendants, individually or collectively with any other Defendants, is the majority

owner or controls directly or indirectly, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Plaintiffs:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission or the Division may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which

Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission and the Division.

2.    Additionally, each Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, each Individual Defendant must report any change in:

(a) name, including aliases or fictitious name, or residence address; or

(b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.     Each Defendant must submit to the Commission and the Division notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Nudge, LLC (et al.) (X200004) (Name of the Defendant).

F.     Unless otherwise directed by a Division representative in writing, all submissions to the Division pursuant to this Order must be emailed to consumerprotection@utah.gov or sent by overnight courier (not the U.S. Postal Service) to: Director, Utah Division of Consumer

Protection, Heber M. Wells Building, 160 East 300 South, P.O. Box 146704, Salt Lake City, Utah 84114-6704.  The subject line must begin:  FTC v. Nudge, LLC (et al.) (X200004) (Name of the Defendant).

## IX. RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.  Specifically, each Corporate Defendant for sales of all goods and services and each Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.    A copy of each unique advertisement or other marketing material.

## X. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission or the Division, each Defendant must:  submit additional compliance reports or

13

other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and the Division are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission and the Division are authorized to communicate directly with each Defendant. Each Defendant must permit representatives of the Commission and the Division to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission and the Division may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission or the Division, any consumer reporting agency must furnish consumer reports concerning Individual Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

//

//

//

## XI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this ___ day of _____, 2023.**

_____
DAVID B. BARLOW
UNITED STATES DISTRICT JUDGE

**IT IS SO STIPULATED AND AGREED:**

**FOR PLAINTIFFS:**

**FEDERAL TRADE COMMISSION**

_____          Date: _May 11, 2023_
Darren H. Lubetzky
Brian N. Lasky
Christopher Y. Miller
Karen Dahlberg O'Connell
Vikram Jagadish
Savvas S. Diacosavvas
Jordan X. Navarrette
Adam K. Hersh
(Each appearing per DUCivR 83-1.1(b)(1))
**Federal Trade Commission**
One Bowling Green, Suite 318
New York, NY 10004
Telephone: (212) 607-2808 (D. Lubetzky)
Fax: (212) 607-2822
Email: dlubetzky@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**UTAH DIVISION OF CONSUMER PROTECTION:**

Date: MAY 5, 2023

Douglas Crapo (14620)
Michael Gadd (13704)
Assistant Attorney General
Utah Attorney General's Office
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
Tel: (801) 366-0310
crapo@agutah.gov
mgadd@agutah.gov
Attorneys for Plaintiff
UTAH DIVISION OF CONSUMER
PROTECTION

**FOR DEFENDANTS:**

Date: 5-8-2023

Erik A. Christiansen (Bar No. 7372)
Zack. L. Winzeler (Bar No. 12280)
Alan S. Mouritsen (Bar No. 13558)
Gregory H. Gunn (Bar No. 15610)
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
EChristiansen@parsonsbehle.com
ZWinzeler@parsonsbehle.com
AMouritsen@parsonsbehle.com
GGunn@parsonsbehle.com
ecf@parsonsbehle.com
Attorneys for Nudge Defendants

Leonard L. Gordon (pro hac vice)
Alexandra Megaris (pro hac vice)
**VENABLE LLP**
1270 Avenue of the Americas
24th Floor
New York, NY 10020
Telephone: (212) 370-6277
Fax: (212) 307-5598

16

LLGordon@venable.com
AMegaris@Venable.com

J. Douglas Baldridge (pro hac vice)
Vincent E. Verrocchio (pro hac vice)
Michael A. Munoz (pro hac vice)
Christopher J. Ricigliano (pro hac vice)
**VENABLE LLP**
600 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 344-4000
JBaldridge@venable.com
VEVerrocchio@venable.com
MAMunoz@venable.com
CJRicigliano@venable.com
Attorneys for Nudge Defendants

**DEFENDANTS:**

_____     Date: 5-8-23

Brandon B. Lewis, individually, and as an
owner of Nudge, LLC

_____     Date: 5-8-23

Ryan C. Poelman, individually, and as an
owner of Nudge, LLC and BuyPD, LLC

_____     Date: 5/8/23

Phillip W. Smith, individually, and as an
owner of Response Marketing Group, LLC

_____     Date: 5/8/23

Shawn L. Finnegan, individually, and as a
principal of Response Marketing Group, LLC

_____     Date: 5/8/23

Clint R. Sanderson, individually

# ATTACHMENT A

**Federal Trade Commission** §310.2

APPENDIX A TO PART 309—FIGURES FOR PART 309



Figure 1

Figure 2

Figure 3

[60 FR 26955, May 19, 1995, as amended at 69 FR 55339, Sept. 14, 2004; 78 FR 23835, Apr. 23, 2013]

## PART 310—TELEMARKETING SALES RULE

Sec.
310.1 Scope of regulations in this part.
310.2 Definitions.
310.3 Deceptive telemarketing acts or practices.
310.4 Abusive telemarketing acts or practices.
310.5 Recordkeeping requirements.
310.6 Exemptions.
310.7 Actions by states and private persons.
310.8 Fee for access to the National Do Not Call Registry.
310.9 Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

### §310.1 Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

### §310.2 Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

385

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Cash-to-cash money transfer* means the electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) transfer of the value of cash received from one person to another person in a different location that is sent by a money transfer provider and received in the form of cash. For purposes of this definition, *money transfer provider* means any person or financial institution that provides cash-to-cash money transfers for a person in the normal course of its business, whether or not the person holds an account with such person or financial institution. The term *cash-to-cash money transfer* includes a remittance transfer, as defined in section 919(g)(2) of the Electronic Fund Transfer Act (''EFTA''), 15 U.S.C. 1693a, that is a cash-to-cash transaction; however it does not include any transaction that is:

(1) An electronic fund transfer as defined in section 903 of the EFTA;

(2) Covered by Regulation E, 12 CFR 1005.20, pertaining to gift cards; or

(3) Subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*

(g) *Cash reload mechanism* is a device, authorization code, personal identification number, or other security measure that makes it possible for a person to convert cash into an electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) form that can be used to add funds to a general-use prepaid card, as defined in Regulation E, 12 CFR 1005.2, or an account with a payment intermediary. For purposes of this definition, a cash reload mechanism is not itself a general-use prepaid debit card or a swipe reload process or similar method in which funds are added directly onto a person's own general-use prepaid card or account with a payment intermediary.

(h) *Charitable contribution* means any donation or gift of money or any other thing of value.

(i) *Commission* means the Federal Trade Commission.

(j) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(k) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(l) *Credit card sales draft* means any record or evidence of a credit card transaction.

(m) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(n) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(o) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(p) *Donor* means any person solicited to make a charitable contribution.

(q) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the

**Federal Trade Commission** §310.2

consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(r) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(s) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(t) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(u) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(v) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(w) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(x) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(y) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(z) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(aa) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(bb) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(cc) *Remotely created payment order* means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a ''remotely created check,'' as defined in Regulation CC, Availability of Funds and Collection of Checks, 12 CFR 229.2(fff), but does not include a payment order cleared through an Automated Clearinghouse (ACH) Network or subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 1026.

(dd) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(ee) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(ff) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(gg) *Telemarketing* means a plan, program, or campaign which is conducted

to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term ''further solicitation'' does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(hh) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An ''external upsell'' is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An ''internal upsell'' is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77557, Dec. 14, 2015]

### § 310.3  Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay [659] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; [660]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

**Federal Trade Commission**                                                       **§ 310.3**

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) An accurate description, clearly and conspicuously stated, of the goods or services or charitable contribution for which payment authorization is sought;

(B) The number of debits, charges, or payments (if more than one);

(C) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(D) The amount(s) of the debit(s), charge(s), or payment(s);

(E) The customer's or donor's name;

(F) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(G) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(H) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§ 310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

---

[661] Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

**Federal Trade Commission** §310.4

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77558, Dec. 14, 2015]

§310.4 **Abusive telemarketing acts or practices.**

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not

apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(1) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(2) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in § 310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be

**Federal Trade Commission**                                               **§ 310.4**

charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section;

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours;

(9) Creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing; or

(10) Accepting from a customer or donor, directly or indirectly, a cash-to-cash money transfer or cash reload mechanism as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller

to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:

(*1*) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature [664] of that person; or

---

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a
*Continued*

393

(2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a non-profit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or

valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

maintained by the Commission pursuant to §310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telemarketing calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating §310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with §310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to §310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with §310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to §310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

(4) A seller or telemarketer will not be liable for violating §310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-

day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

(iv) The seller or telemarketer, in accordance with §310.5(b)-(d), retains records establishing compliance with §310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011; 80 FR 77559, Dec. 14, 2015]

### § 310.5 Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

### § 310.6 Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

**Federal Trade Commission**  §310.7

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1), for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) for any requested charitable contribution; *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4);

(ii) The requirements of §310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business to induce the purchase of goods or services or a charitable contribution by the business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §§310.4(b)(1)(iii)(B) and 310.5 shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77559, Dec. 14, 2015]

**§310.7  Actions by states and private persons.**

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to

the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

### § 310.8 Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under § 310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do

Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $66 for each area code of data accessed, up to a maximum of $18,044; *provided*, however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. No person may participate in any arrangement to share the cost of accessing the National Do Not Call Registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in paragraph (c) of this section, each person excepted under paragraph (c) from paying the annual fee, and each person excepted from paying an annual fee under § 310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $66 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $33 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

**Federal Trade Commission**                                    **§ 311.3**

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013; 79 FR 51478, Aug. 29, 2014; 80 FR 77560, Dec. 14, 2016; 81 FR 59845, Aug. 31, 2016; 82 FR 39534, Aug. 21, 2017; 83 FR 46640, Sept. 14, 2018; 84 FR 44687, Aug. 27, 2019; 85 FR 62597, Oct. 5, 2020]

**§ 310.9   Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

## PART 311—TEST PROCEDURES AND LABELING STANDARDS FOR RECYCLED OIL

Sec.
311.1   Definitions.
311.2   Stayed or invalid parts.
311.3   Preemption.
311.4   Testing.
311.5   Labeling.
311.6   Prohibited acts.

AUTHORITY: 42 U.S.C. 6363(d).

SOURCE: 60 FR 55421, Oct. 31, 1995, unless otherwise noted.

**§ 311.1   Definitions.**

As used in this part:

(a) *Manufacturer* means any person who re-refines or otherwise processes used oil to remove physical or chemical impurities acquired through use or who blends such re-refined or otherwise processed used oil with new oil or additives.

(b) *New oil* means any synthetic oil or oil that has been refined from crude oil and which has not been used and may or may not contain additives. Such term does not include used oil or recycled oil.

(c) *Processed used* oil means re-refined or otherwise processed used oil or blend of oil, consisting of such re-refined or otherwise processed used oil and new oil or additives.

(d) *Recycled oil* means processed used oil that the manufacturer has determined, pursuant to section 311.4 of this part, is substantially equivalent to new oil for use as engine oil.

(e) *Used oil* means any synthetic oil or oil that has been refined from crude oil, which has been used and, as a result of such use, has been contaminated by physical or chemical impurities.

(f) *Re-refined oil* means used oil from which physical and chemical contaminants acquired through use have been removed.

**§ 311.2   Stayed or invalid parts.**

If any part of this rule is stayed or held invalid, the rest of it will remain in force.

**§ 311.3   Preemption.**

No law, regulation, or order of any State or political subdivision thereof may apply, or remain applicable, to any container of recycled oil, if such law, regulation, or order requires any container of recycled oil, which container bears a label in accordance with the terms of § 311.5 of this part, to bear any label with respect to the comparative characteristics of such recycled oil with new oil that is not identical to that permitted by § 311.5 of this part.

# ATTACHMENT B

# Chapter 26
# Telephone Fraud Prevention Act

**13-26-1 Short title.**
This chapter is known as the "Telephone Fraud Prevention Act."

Enacted by Chapter 154, 1990 General Session

**13-26-2 Definitions.**
As used in this chapter, unless the context otherwise requires:
(1) "Affiliated person" means a seller or a seller's contractor, director, employee, officer, owner, or partner.
(2) "Continuity plan" means a shipment, with the prior express consent of the buyer, at regular intervals of similar special-interest products, in which there is no binding commitment period or purchase amount.
(3) "Division" means the Division of Consumer Protection.
(4) "Fictitious personal name" means a name other than an individual's legal name.
(5) "Material statement" or "material fact" means information that a person of ordinary intelligence or prudence would consider important in deciding whether to accept an offer extended through a telephone solicitation.
(6) "Participant" means a person seeking to register or renew a registration as a seller including:
  (a) a seller;
  (b) an owner;
  (c) an officer;
  (d) a director;
  (e) a member or manager of a limited liability company;
  (f) a principal;
  (g) a trustee;
  (h) a general or limited partner;
  (i) a sole proprietor; or
  (j) an individual with a controlling interest in an entity.
(7) "Premium" means a gift, bonus, prize, award, certificate, or other document by which a prospective purchaser is given a right, chance, or privilege to purchase or receive goods or services with a stated or represented value of $25 or more as an inducement to a prospective purchaser to purchase other goods or services.
(8) "Seller" means a person, or a group of persons engaged in a common effort to conduct a telephone solicitation, that:
  (a) on behalf of the person, or the group of persons engaged in a common effort to conduct a telephone solicitation:
    (i) makes a telephone solicitation; or
    (ii) causes a telephone solicitation to be made; or
  (b) through a telephone solicitor:
    (i) makes a telephone solicitation; or
    (ii) causes a telephone solicitation to be made.
(9) "Subscription arrangements," "standing order arrangements," "supplements," and "series arrangements" mean products or services provided, with the prior express request or consent

of the buyer, for a specified period of time at a price dependent on the duration of service and to complement an initial purchase.

(10)
  (a) "Telephone solicitation," "sale," "selling," or "solicitation of sale" means:
    (i) a sale or solicitation of goods or services in which:
      (A)
        (I) the seller solicits the sale over the telephone;
        (II) the purchaser's agreement to purchase is made over the telephone; and
        (III) the purchaser, over the telephone, pays for or agrees to commit to payment for goods or services prior to or upon receipt by the purchaser of the goods or services;
      (B) the seller, not exempt under Section 13-26-4, induces a prospective purchaser over the telephone, to make and keep an appointment that directly results in the purchase of goods or services by the purchaser that would not have occurred without the telephone solicitation and inducement by the seller;
      (C) the seller offers or promises a premium to a prospective purchaser if:
        (I) the seller induces the prospective purchaser to initiate a telephone contact with the seller; and
        (II) the resulting solicitation meets the requirements of Subsection (10)(a); or
      (D) the seller solicits a charitable donation involving the exchange of any premium, prize, gift, ticket, subscription, or other benefit in connection with an appeal made for a charitable purpose by an organization that is not otherwise exempt under Subsection 13-26-4(2)(b)(iv); or
    (ii) a telephone solicitation as defined in Section 13-25a-102.
  (b) "Telephone solicitation," "sale," "selling," or "solicitation of sale" does not include a sale or solicitation that occurs solely through an Internet website without the use of a telephone call.
  (c) A solicitation of sale or telephone solicitation is considered complete when made, whether or not the person receiving the solicitation agrees to the sale or to make a charitable donation.
(11) "Telephone solicitor" or "solicitor" means an individual who engages in a telephone solicitation on behalf of a seller.

Amended by Chapter 324, 2022 General Session

## 13-26-3 Registration and bond required.

(1)
  (a) Unless exempt under Section 13-26-4, each seller shall register annually with the division before engaging in telephone solicitations if:
    (i) the seller engages in telephone solicitations that:
      (A) originate in Utah; or
      (B) are received in Utah; or
    (ii) the seller, or a solicitor on behalf of the seller, conducts any business operations in Utah.
  (b) The registration form shall designate an agent residing in this state who is authorized by the seller to receive service of process in any action brought by this state or a resident of this state.
  (c) If a seller fails to designate an agent to receive service or fails to appoint a successor to the agent, the division shall:
    (i) deny the seller's application for an initial or renewal registration; and
    (ii) if the application is for a renewal registration, suspend the seller's current registration until the seller designates an agent.

(d) For purposes of this section only, the registered agent of a seller shall provide the division the registered agent's proof of residency in the state in the form of:

(i) a valid Utah driver license;

(ii) a valid governmental photo identification issued to a resident of this state; or

(iii) other verifiable identification indicating residency in this state.

(2) The division may impose an annual registration fee set in accordance with Section 63J-1-504 that may include the cost of the criminal background check described in Subsection (4).

(3)

(a) Each seller subject to this chapter engaging in telephone solicitation or sales in this state shall obtain and maintain the following security:

(i) a performance bond issued by a surety authorized to transact surety business in this state;

(ii) an irrevocable letter of credit issued by a financial institution authorized under the laws of this state or the United States doing business in this state; or

(iii) a certificate of deposit held in this state in a financial institution authorized under the laws of this state or the United States to accept deposits from the public.

(b) A seller's bond, letter of credit, or certificate of deposit shall be payable to the division for the benefit of any consumer who incurs damages as the result of the seller's violation of this chapter.

(c) If the consumer has first recovered full damages, the division may recover from the bond, letter of credit, or certificate of deposit administrative fines, civil penalties, investigative costs, attorney fees, and other costs of collecting and distributing funds under this section.

(d) A seller shall keep a bond, certificate of deposit, or letter of credit in force for one year after the day on which the seller notifies the division in writing that the seller has ceased all activities regulated by this chapter.

(e) The seller shall post a bond, irrevocable letter of credit, or certificate of deposit in the amount of:

(i) $25,000 if:

(A) neither the seller nor any affiliated person has violated this chapter in the three-year period immediately before the day on which the seller files the application; and

(B) the seller has fewer than 10 employees;

(ii) $50,000 if:

(A) neither the seller nor any affiliated person has violated this chapter in the three-year period immediately before the day on which the seller files the application; and

(B) the seller has 10 or more employees; or

(iii) $75,000 if the seller or any affiliated person has violated this chapter in the three-year period immediately before the day on which the seller files the application.

(4) To register or renew a registration as a seller, a participant:

(a) may not have been convicted of a felony in the 10-year period immediately before the day on which the participant files the application;

(b) may not have been convicted of a misdemeanor involving moral turpitude, including theft, fraud, or dishonesty, in the 10-year period immediately before the day on which the participant files the application; and

(c) shall submit to the division:

(i) the participant's fingerprints, in a form acceptable to the division, for purposes of a criminal background check; and

(ii) consent to a criminal background check by the Bureau of Criminal Identification created in Section 53-10-201.

(5) In accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act, the division may establish by rule the registration requirements for a seller.

(6) If information in an application for registration or for renewal of registration as a seller materially changes or becomes incorrect or incomplete, the applicant shall, within 30 days after the day on which information changes or becomes incorrect or incomplete, submit the correct information to the division in a manner that the division establishes by rule.

(7) The division director may deny or revoke a registration under this section for any violation of this chapter.

Amended by Chapter 324, 2022 General Session

**13-26-4 Exemptions from registration.**

(1) In an enforcement action initiated by the division, a person claiming an exemption has the burden of proving that the person is entitled to the exemption.

(2) The following are exempt from this chapter except for the requirements described in Sections 13-26-8 and 13-26-11:

  (a) a broker, agent, dealer, or sales professional licensed in this state, when soliciting sales within the scope of the broker's, agent's, dealer's, or sales professional's license;

  (b) the solicitation of sales by:

    (i) a public utility that is regulated under Title 54, Public Utilities, or by an affiliate of the public utility;

    (ii) a newspaper of general circulation;

    (iii) a solicitation of sale made by a broadcaster licensed by a state or federal authority;

    (iv) a nonprofit organization if no part of the net earnings from the sale inures to the benefit of:

      (A) a member, officer, trustee, or serving board member of the organization; or

      (B) an individual, or a family member of an individual, holding a position of authority or trust in the organization; and

    (v) a person who periodically publishes and delivers a catalog of the seller's merchandise to prospective purchasers, if the catalog:

      (A) contains the price and a written description or illustration of each item offered for sale;

      (B) includes the seller's business address;

      (C) includes at least 24 pages of written material and illustrations;

      (D) is distributed in more than one state; and

      (E) has an annual circulation by mailing of not less than 250,000;

  (c) a publicly traded corporation registered with the Securities and Exchange Commission, or a subsidiary of the publicly traded corporation;

  (d) the solicitation of a depository institution as defined in Section 7-1-103, a subsidiary of a depository institution, personal property broker, securities broker, investment adviser, consumer finance lender, or insurer subject to regulation by an official agency of this state or the United States;

  (e) the solicitation by a person soliciting only the sale of telephone services to be provided by the person or the person's employer;

  (f) the solicitation of a person relating to a transaction regulated by the Commodities Futures Trading Commission, if:

    (i) the person is registered with or temporarily licensed by the commission to conduct the activity under the Commodity Exchange Act; and

    (ii) the registration or license has not expired or been suspended or revoked;

   (g) the solicitation of a contract for the maintenance or repair of goods previously purchased from the person:

     (i) who is making the solicitation; or

     (ii) on whose behalf the solicitation is made;

   (h) the solicitation of previous customers of the person on whose behalf the call is made if the person making the call:

     (i) does not offer any premium in conjunction with a sale or offer;

     (ii) is not selling an investment or an opportunity for an investment that is not registered with a state or federal authority; and

     (iii) is not regularly engaged in telephone sales;

   (i) the solicitation of a sale that is an isolated transaction and not done in the course of a pattern of repeated transactions of a similar nature;

   (j) the solicitation of a person by a retail business that has been in operation for at least five years in Utah under the same name as that used in connection with telemarketing if the following occur on a continuing basis:

     (i) at the retail business's place of business, the retail business:

       (A) displays and offers products for sale; or

       (B) offers services for sale and provides the services at the place of business; and

     (ii) a majority of the retail business's business involves the activities described in Subsection (2)(j)(i);

   (k) a person primarily soliciting the sale of a magazine or periodical sold by the publisher or the publisher's agent through a written agreement, or printed or recorded material through a contractual plan, such as a book or record club, continuity plan, subscription, standing order arrangement, or supplement or series arrangement if:

     (i) the person provides the consumer with a form that the consumer may use to instruct the person not to ship the offered merchandise, and the arrangement is regulated by the Federal Trade Commission trade regulation concerning use of negative option plans by a person making a sale in commerce; or

     (ii)

       (A) the person periodically ships merchandise to a consumer who has consented in advance to receive the merchandise on a periodic basis; and

       (B) the consumer retains the right to cancel at any time and receive a full refund for the unused portion;

   (l) a telephone marketing service company that provides telemarketing sales services under contract to a person making a sale if:

     (i) the telephone marketing service company has been doing business regularly with customers in Utah for at least five years under the same business name and with the telephone marketing service company's principal office in the same location;

     (ii) at least 75% of the telephone marketing service company's contracts are performed on behalf of persons exempt from registration under this chapter; and

     (iii) neither the telephone marketing service company nor the telephone marketing service company's principals have been enjoined from doing business or subjected to criminal actions for the telephone marketing service company's or the telephone marketing company's principal's business activities in this or any other state;

   (m) a credit services organization that holds a current registration with the division under Chapter 21, Credit Services Organizations Act, if the credit services organization's telephone solicitations are limited to the solicitation of services regulated under Chapter 21, Credit Services Organizations Act; and

(n) a provider that holds a current registration with the division under Chapter 42, Uniform Debt-Management Services Act, if the provider's telephone solicitations are limited to the solicitation of services regulated under Chapter 42, Uniform Debt-Management Services Act.

Amended by Chapter 324, 2022 General Session

**13-26-5 Right of rescission -- Cancellation.**
(1) As used in this section, "business day" means a day other than Sunday or a federal or state holiday.
(2)
  (a) Except as provided in Subsections (2)(b) and (c), in addition to any right to otherwise revoke an offer, a person who makes a purchase from a seller may cancel the sale before midnight of the third business day after the day on which the person receives the merchandise or premium, whichever is later, provided the seller or the seller's solicitor advises the purchaser of the purchaser's cancellation rights under this chapter at the time the solicitation is made.
  (b) If the seller or the seller's solicitor fails to orally advise a purchaser of the right to cancel under this section at the time of a solicitation, the purchaser's right to cancel is extended to 90 days.
  (c) If the seller or the seller's solicitor fails to orally advise a purchaser of the seller's or the seller's solicitor's legal name, telephone number, and complete address at the time of a solicitation, the purchaser may cancel the sale at any time.
  (d) Except as provided in Subsection (5), a seller shall provide a full refund to a purchaser who cancels a sale in accordance with this section.
(3) A purchaser may cancel a sale by:
  (a) mailing a notice of cancellation to the seller or seller's solicitor's correct address, postage prepaid; or
  (b) if the seller or the seller's solicitor fails to provide the purchaser with the seller's or the seller's solicitor's correct address, sending a notice of cancellation to the division's office, postage prepaid.
(4)
  (a) If a purchaser cancels a sale and the seller or the seller's solicitor provides the purchaser with the seller's correct address, the purchaser shall, within seven business days after the day on which the purchaser exercises the right to cancel, make a reasonable attempt to:
    (i) if the canceled sale involves durable goods, return the goods to the seller; or
    (ii) if the canceled sale involves expendable goods, return any unused portion of the goods to the seller.
  (b) If the seller or the seller's solicitor fails to provide to a purchaser the seller's correct address, a purchaser who cancels a sale is not required to return any canceled goods to the seller.
(5)
  (a) If the purchaser who cancels a sale has used any portion of the services or goods purchased, the purchaser shall provide the seller a reasonable allowance for the value given.
  (b) A seller may deduct the reasonable allowance described in Subsection (5)(a) from any refund due the purchaser.

Amended by Chapter 324, 2022 General Session

**13-26-8 Penalties.**
(1)
  (a) A seller or solicitor who violates a provision of this chapter is guilty of:

     (i) a class B misdemeanor for a first violation;
     (ii) if the seller or solicitor has one prior violation of this chapter, a class A misdemeanor; and
     (iii) if the seller or solicitor has two prior violations of this chapter, a third-degree felony.
  (b) For the purposes of Subsection (1)(a), a prior violation includes:
     (i) a final prior conviction;
     (ii) a final determination by a court of competent jurisdiction; or
     (iii) a final determination in an administrative adjudicative proceeding.
(2) A person who violates a provision of this chapter is subject to a civil penalty in a court of
   competent jurisdiction of up to $2,500 for each violation of this chapter.
(3)
  (a) The division may:
     (i) in accordance with Title 63G, Chapter 4, Administrative Procedures Act, conduct an
       administrative proceeding to enforce the provisions of this chapter;
     (ii) bring a court action to enforce the provisions of this chapter; and
     (iii) in addition to other penalties described in this chapter, issue a cease and desist order and
       impose an administrative fine of up to $2,500 for each violation of this chapter.
  (b) For purposes of this section, each telephone solicitation made in violation of this chapter is a
    separate violation.
(4) The division shall deposit all administrative fines and civil penalties collected under this chapter
   into the Consumer Protection Education and Training Fund created in Section 13-2-8.

Amended by Chapter 324, 2022 General Session

**13-26-10 Provisions of chapter not exclusive.**
   The remedies, duties, prohibitions, and penalties of this chapter are not exclusive and are in
addition to all other causes of action, remedies, and penalties provided by law.

Enacted by Chapter 184, 1991 General Session

**13-26-11 Prohibited practices.**
(1) It is unlawful for a seller to:
  (a) solicit a prospective purchaser if the seller is not registered with the division or exempt from
    registration under this chapter;
  (b) in connection with a telephone solicitation or a filing with the division, make or cause to be
    made a false material statement or fail to disclose a material fact necessary to make the
    seller's statement not misleading;
  (c) make or authorize the making of a misrepresentation to a purchaser or prospective purchaser
    about the seller's compliance with this chapter;
  (d) fail to refund within 30 days any amount due a purchaser who exercises the right to cancel
    under Section 13-26-5;
  (e) unless the seller is exempt under Section 13-26-4, fail to orally advise a purchaser of the
    purchaser's right to cancel under Section 13-26-5;
  (f) employ an inmate in a correctional facility for telephone soliciting operations when the
    employment would give the inmate access to an individual's personal data, including
    the individual's name, address, telephone number, Social Security number, credit card
    information, or physical description; or
  (g) cause or permit a solicitor to violate a provision of this chapter.
(2) It is unlawful for a solicitor to:

(a) use a fictitious personal name in connection with a telephone solicitation;
(b) in connection with a telephone solicitation, make or cause to be made a false material statement or fail to disclose a material fact necessary to make the solicitor's statement not misleading;
(c) make a misrepresentation to a purchaser or prospective purchaser about the solicitor's compliance with this chapter; or
(d) unless the solicitor is exempt under Section 13-26-4, fail to orally advise a purchaser of the purchaser's right to cancel under Section 13-26-5.
(3) If a person knows or has reason to know that a seller or solicitor is engaged in an act or practice that violates this chapter, it is unlawful for the person to:
(a) benefit from the seller's or solicitor's services; or
(b) provide substantial assistance or support to the seller or solicitor.

Amended by Chapter 324, 2022 General Session

**13-26-12 Consumer complaints are public.**
(1) As used in this section, "consumer complaint" means a complaint that:
(a) a person files with the division;
(b) alleges facts relating to conduct that the division regulates under this chapter; and
(c)
  (i) alleges a loss to the person described in Subsection (1)(a) of $3,500 or more; or
  (ii) is one of at least 50 complaints filed with the division:
    (A) against the same person; and
    (B) during the four-year period immediately before the day on which the person described in Subsection (1)(a) files the complaint.
(2) For purposes of determining the number of complaints against the same person under Subsection (1)(c)(ii)(A), the division may consider complaints filed against multiple corporations, limited liability companies, partnerships, or other business entities under common ownership to be complaints against the same person.
(3) Notwithstanding Subsection 13-11-7(2) and subject to Subsections (4) and (5), a consumer complaint:
(a) is a public record; and
(b) may not be classified as a private, controlled, or protected record under Title 63G, Chapter 2, Government Records Access and Management Act.
(4) Subsection (3) does not apply to a consumer complaint:
(a) that is nonmeritorious, beginning the day on which:
  (i) the division determines through an administrative proceeding that the consumer complaint is nonmeritorious; or
  (ii) a court of competent jurisdiction finds the consumer complaint nonmeritorious; or
(b) that is on file with the division for more than four years after the day on which the person files the consumer complaint.
(5) Before making a consumer complaint that is subject to Subsection (3) or a response described in Subsection (6) available to the public, the division:
(a) shall redact from the consumer complaint or response any information that would disclose:
  (i) the filer's:
    (A) address;
    (B) Social Security number;
    (C) bank account information;

  (D) email address; or
  (E) telephone number; or
 (ii) information similar in nature to the information described in Subsection (5)(a)(i); and
 (b) may redact the name of the filer and any other information that could, in the division's judgment, disclose the identity of the filer filing the consumer complaint.
(6) A person's initial, written response to a consumer complaint that is subject to Subsection (3) is a public record.

Amended by Chapter 324, 2022 General Session

# ATTACHMENT C

## **<u>COLLATERAL</u>**

The Deferred Payments identified in Sections IV.C.2-4 of the Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief as to Defendants Nudge, LLC; Response Marketing Group, LLC; BuyPD, LLC; Brandon B. Lewis; Ryan C. Poelman; Phillip W. Smith; Shawn L. Finnegan; and Clint R. Sanderson shall be secured by a second lien on the real property, leases, and future rents owned by Building One Lindon, LLC, located at the address commonly referred to as 380 S Technology Court, Lindon, Utah 84042.  This property is also known as Parcel Number 45-417-0018.